1
**HILL, FARRER & BURRILL LLP**
Kevin H. Brogan (Bar No. 089427)
2
kbrogan@hillfarrer.com
Stephen J. Tomasulo (Bar No. 181013)
3
stomasulo@hillfarrer.com
Jeffrey B. Bell (Bar No. 269648)
4
jbell@hillfarrer.com
One California Plaza
5
300 S. Grand Avenue, 37th Floor
Los Angeles, California 90071-3147
6
Telephone:  213.620.0460
Fax:  213.624.4840
7

Attorneys for Plaintiffs/Counter-Defendants
8
3500 SEPULVEDA, LLC and 13th & CREST
ASSOCIATES, LLC, and Counter-Defendant
9
6220 SPRING ASSOCIATES, LLC

10                          UNITED STATES DISTRICT COURT

11                          CENTRAL DISTRICT OF CALIFORNIA

12
3500 SEPULVEDA, LLC, a Delaware          Case No. 2:17-cv-08537-AFM
13
limited liability company; and 13th &
CREST ASSOCIATES, LLC, a                 The Honorable Alexander F.
14
California limited liability company,     MacKinnon

15                    Plaintiff,

16          v.                           **PLAINTIFFS' OPPOSITION
                                         BRIEF RE: LEGAL
17
RREEF AMERICA REIT II                    INTERPRETATION OF
CORPORATION BBB, a Maryland              SETTLEMENT AGREEMENT**
18
corporation; MACY'S WEST STORES,
INC; and Does 1-25, inclusive,
19
                      Defendants.
20
RREEF AMERICA REIT II
21
CORPORATION BBB, a Maryland
corporation
22
                      Counter-Claimant,
23
3500 SEPULVEDA, LLC, a Delaware
24
limited liability company;13th & CREST
ASSOCIATES, LLC, a California limited
25
liability company; and 6220 SPRING
ASSOCIATES, LLC, a California limited
26
liability company,

27                    Counter-Defendants.

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1

**TABLE OF CONTENTS**

2

**Page**

3    I.    INTRODUCTION ................................................................................4

4    II.   FACTUAL BACKGROUND .............................................................6

     III.  ARGUMENT ......................................................................................9

5          A.    Plaintiffs Promised Not to Object to RREEF's Shopping Center
6                 Project in Exchange for the Assurance that it Would be
                  Reasonably Consistent with the Agreed Upon Site Plan.....................9

7          B.    Unless Limited by the Implied Covenant of Good Faith and Fair
                  Dealing, RREEF's "Sole and Absolute Discretion" to Amend
8                 the Site Plan Would Render the Settlement Agreement Illusory. ......11

9    IV.   CONCLUSION ................................................................................14

10

11

12

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1
2

# TABLE OF AUTHORITIES

3

**Page(s)**

4

**State Cases**

5
*ASP Properties Group, L.P. v. Fard, Inc.*,
6
   133 Cal. App. 4th 1257 (2005) .......................................................................... 9

7
*Automatic Vending Co. v. Wisdom*,
8
   182 Cal. App. 2d 354 (1960) ............................................................................ 12

9
*Badie v. Bank of America*,
   67 Cal. App. 4th 779 (1998) ............................................................................ 12
10

11
*Golden West Baseball Co. v. City of Anaheim*,
   25 Cal. App. 4th 11 (1994) .............................................................................. 10
12

13
*Perdue v. Crocker National Bank*,
   38 Cal.3d 913 (1985) ....................................................................................... 12
14

15
*Robinson & Wilson, Inc. v. Stone*,
   35 Cal. App. 3d 396 .......................................................................................... 13

16
*Serpa v. California Surety Investigations, Inc.*,
17
   215 Cal. App. 4th 695 (2013) .......................................................................... 12

18

**State Statutes**

19

Civil Code § 1542 .................................................................................................... 8

20

**Other Authorities**

21
22
Shopping Center *as depicted in the Site Plan* ................................................... 7, 8

23
24
25
26
27
28

3

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

I.      **INTRODUCTION**

This dispute arises from RREEF America REIT II Corporation BBB's ("RREEF") expansion of the Manhattan Village Shopping Center in Manhattan Beach, California (the "Shopping Center").  RREEF and Defendant Macy's West Stores, Inc. own 22 of the 23 parcels comprising the Shopping Center.  Plaintiffs 3500 Sepulveda, LLC and 13th & Crest Associates, LLC (together, "Plaintiffs") own a single parcel presently improved by a restaurant, cake shop, and fertility center, among other tenants.  In 2008, after years of bitter disputes over the development of the Shopping Center, RREEF and Plaintiffs entered into a comprehensive Settlement Agreement to "fully compromise, settle, and resolve any and all claims and disputes" between them relating to each of their respective pending development projects.  The Settlement Agreement addressed the serious concerns Plaintiffs had raised about the potential impact of RREEF's expansion on Plaintiffs and their tenants—most notably the significant potential reduction in readily accessible parking for Plaintiffs' tenants—and provided that the Site Plan attached as Exhibit E to the Settlement Agreement ("Site Plan") would be included in the amended application RREEF would submit to the City of Manhattan Beach ("City") to expand the Shopping Center.

The question for the court is not, as RREEF broadly frames it, whether the Settlement Agreement "places any limitations on RREEF America's ability to make changes to its development plans and submit those changed plans for municipal review and approval.  [Opening Brief, p. 5:7–9.]  Rather, the more accurate question is whether the Settlement Agreement would permit RREEF to materially change the heavily negotiated Site Plan *unreasonably and in bad faith*.  Although RREEF may be reluctant to say it out loud, its position is (as it must be) *yes*, the Settlement Agreement gave it the unbridled power to change the agreed upon Site Plan in any way it saw fit, even in bad faith and in total disregard of any harm it would cause Plaintiffs.

PLAINTIFFS' OPPOSITION BRIEF RE: LEGAL INTERPRETATION OF SETTLEMENT AGREEMENT

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1    The problem RREEF faces, however, is that a key component of the

2    Settlement was RREEF's agreement that it would submit the Site Plan as part of its

3    amended application to the City to expand the Shopping Center.  This is a problem

4    for RREEF because the face of the Settlement Agreement technically gave it

5    unlimited discretion to amend that Site Plan.  This would present a textbook

6    illusory promise, since a promise to submit a Site Plan that one party has unfettered

7    power to revise is no promise at all.  However, longstanding California law would

8    kick in to save the illusory provision by imposing a standard of good faith and fair

9    dealing on RREEF's exercise of discretion.  RREEF, however, contends it was not

10    required to act in good faith.

11    RREEF therefore has no choice but to offer a revisionist explanation of the

12    Settlement Agreement's purpose that minimizes the central role of the Site Plan.

13    Indeed, RREEF's Opening Brief all but ignores the Site Plan, narrowly recasting

14    the Settlement Agreement as nothing more than a mutual ceasefire treaty whereby

15    Plaintiffs agreed not to object to RREEF's Shopping Center project in exchange for

16    RREEF's promise not to object to Plaintiffs' conversion of the one of its buildings

17    (known as the "Hacienda Building") to restaurant use.  Under this restricted view of

18    the Settlement Agreement, RREEF argues that the Site Plan and other project plans

19    in the Settlement Agreement were merely "conceptual" and included solely for the

20    limited purpose of establishing a "baseline" to delimit the kind of things Plaintiffs

21    could and could not object to.  [Opening Brief at p. 9:10–15, 25–26.]  The

22    Settlement Agreement does not support this strained interpretation.

23    As the face of the Settlement Agreement shows—and the evidence at trial

24    will further support—the primary reason Plaintiffs agreed not to object to RREEF's

25    Shopping Center expansion (and the reason it released all actual and potential

26    claims relating to the project) was its assurance that the expansion *would*

27    *reasonably track the agreed upon project plans*.  Of course, it is not disputed that

28    the Settlement Agreement gave RREEF broad discretion to revise the project plans.

5

1    But the Settlement Agreement does not support RREEF's draconian proposition

2    that it had unlimited discretion to amend the Site Plan, even in bad faith.  As

3    explained below, if RREEF were correct that it could revise the Site Plan in any

4    manner it wanted, unbounded by any standard of reasonableness or good faith, the

5    Settlement Agreement would be rendered illusory, entirely frustrating the very

6    purpose for which Plaintiffs entered into it.

7    **II.    FACTUAL BACKGROUND**

8            RREEF began its efforts to expand the Shopping Center in earnest in 2006

9    when it submitted a Master Application Form and Environmental Information Form

10   to the City seeking to expand the Shopping Center (the "RREEF Application").

11   [*See* Declaration of Sarah F. Mitchell, Dkt. 181-1, Ex. A (the "Settlement

12   Agreement").]  Over the next two years, numerous disputes arose between Plaintiffs

13   and RREEF, the most notable of which related to Plaintiffs' concerns that RREEF's

14   Shopping Center expansion project would impact Plaintiffs and their tenants in the

15   Hacienda Building.  In particular, the evidence at trial will show that Plaintiffs

16   expressed serious concern that the replacement of much preferred surface parking

17   available in "Lot F" with a parking structure would materially interfere with

18   Plaintiffs' tenants' business operations.  Around that time a dispute also arose

19   relating to Plaintiffs' submission of an application with the City to convert the

20   Hacienda Building from office to restaurant use, a transition permitted under the

21   existing Master Use Permit for the Shopping Center.  [Settlement Agreement, p. 1,

22   ¶¶ 6–10.]

23           In October of 2008, the parties entered into the Settlement Agreement to

24   "fully compromise, settle, and resolve *any and all claims and disputes between*

25   *them*" relating to RREEF's Shopping Center expansion project.  [Settlement

26   Agreement, p. 2, ¶ 5.]  The Settlement Agreement also resolved RREEF's

27   purported disputes relating to Plaintiffs' conversion of the Hacienda Building to

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

6

1   restaurant use, but the evidence at trial will show that this issue was of

2   comparatively less import as far as the Settlement Agreement was concerned.

3          The agreed upon Site Plan and Parking Plan attached as Exhibits E and H to

4   the Settlement Agreement, respectively (together, the "Project Plans"), were a key

5   part of the Settlement Agreement.  In stark contrast to RREEF's contention that the

6   Site Plan was "conceptual" and included merely to establish a "baseline" as to what

7   Plaintiffs could and could not object to, the entire Settlement Agreement is

8   premised on the idea that, should RREEF decide to proceed with the project, the

9   Site Plan would form the basis of RREEF's amended application to the City:

> WHEREAS **RREEF is preparing to amend the RREEF
> Application to reflect a revised expansion plan for the
> Shopping Center as generally depicted in the … Site
> Plan**, attached hereto as Exhibit E (the "Site Plan"; the
> expansion of the Shopping Center is hereafter referred to
> as "Shopping Center Project"; the amended RREEF
> Application, including any Environmental Information
> Form and corresponding entitlements, is hereafter referred
> to as the "Amended RREEF Application")

16  [Settlement Agreement, p. 3, ¶ 3 (emphasis added).]  Indeed, the terms "Site Plan,"

17  "Shopping Center Project," and "Amended RREEF Application" are all defined

18  with reference to the expectation that RREEF would submit the Site Plan attached

19  as Exhibit E (amended or otherwise) as part of its amended application to the to the

20  City.  [*Id.*]

21         Section 4 of the Settlement Agreement (captioned "*Shopping Center*

22  *Project*"), states that RREEF may elect to pursue or not pursue the Shopping Center

23  Project and contains certain agreements between the parties in the event that

24  RREEF chose to proceed.  Consistent with the parties' understanding that the Site

25  Plan would be submitted to the City, Plaintiffs acknowledged in Section 4(a) that

26  they had "reviewed and consent[ed] to the Shopping Center *as depicted in the Site*

27  *Plan*," and that they would "not oppose the City's approval of the Shopping Center

28  Project [as depicted in the Site Plan], except as otherwise provided herein."  [*Id.*, §

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

PLAINTIFFS' OPPOSITION BRIEF RE: LEGAL INTERPRETATION OF SETTLEMENT AGREEMENT

1  4(a) (emphasis added).]  Section 4(a) required that RREEF notify Plaintiffs of any

2  amendments that materially affected them.  [*Id.*]  Section 4(e) further required

3  RREEF and Plaintiffs to "cooperate in good faith with each other in the processing

4  of the Amended RREEF Application … for the Shopping Center Project and the

5  entitlement process pertaining to such Application[]."  [*Id.*, § 4(e).]

6      Section 5 of the Settlement Agreement (captioned "*Proposed Shopping*

7  *Center Parking Decks*") described the proposed parking decks in the Site Plan and

8  provided for optional phasing of construction.  [*Id.*, § 5.]  Subsection (c) stated that

9  RREEF "may revise those portions of the Site Plan relating to the Parking Decks

10  and the Parking Plan from time to time in its sole and absolute discretion," but

11  required any material revisions to be submitted to Plaintiffs for their "***review and***

12  ***approval***" no later than ten business days before submission to the City.  [*Id.*, §

13  5(c).]  Regardless of whether Plaintiffs approved the material revision, RREEF was

14  permitted to submit it to the City, and Plaintiffs were free to object to it.  [*Id.*]

15      In exchange for all of the above, the parties exchanged broad, comprehensive

16  releases with Civil Code section 1542 waivers.  [*Id.*, §§ 11–12.]  Specifically,

17  Plaintiffs released RREEF from:

18  > [A]ny and all claims, lawsuits, demands, challenges,
> liabilities, damages, fees, costs, or causes of action,
19  > known or unknown, that 3500 Sepulveda or the 3500
> Sepulveda Parties have or may have against RREEF or
20  > the RREEF Parties, or any of them, arising in any way
> from or related in any way to a claim that 3500 Sepulveda
21  > or the 3500 Sepulveda Parties may have **with respect to**
22  > **the … the entitlements for the Shopping Center**
> **Project encompassed in the RREEF Application or the**
23  > **Amended RREEF Application**, or (except as otherwise
> provided in this Agreement) arising in the Litigation.
24

25  [*Id.*, § 12 (emphasis added).]

26

27

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

8

## III.    <u>ARGUMENT</u>

RREEF makes two primary arguments in its Opening Brief.  First, RREEF

contends that "the purpose of the Settlement Agreement is to limit each party's

right to object to the other's project." [Opening Brief, p. 15:13–14.]  In that regard,

RREEF contends that the Project Plans were merely conceptual and included only

to establish a baseline of what Plaintiffs would not object to.  [*Id.*, p. 9:10–15, 25–

26.]  Second, RREEF contends that because nothing in the Settlement Agreement

expressly limits its discretion to amend the Site Plan, as a matter of law it could not

have breached the Settlement Agreement or the implied covenant of good faith and

fair dealing.  As explained below, neither argument has merit.

### A.    <u>Plaintiffs Promised Not to Object to RREEF's Shopping Center Project in Exchange for the Assurance that it Would be Reasonably Consistent with the Agreed Upon Site Plan.</u>

"The fundamental rules of contract interpretation are based on the premise

that the interpretation of a contract must give effect to the 'mutual intention' of the

parties" at the time of contracting. *ASP Properties Group, L.P. v. Fard, Inc.*, 133

Cal. App. 4th 1257, 1269 (2005) (quoting Cal. Civ. Code § 1636).  "Such intent is

to be inferred, if possible, solely from the written provisions of the contract." *Id.*

(citing Cal. Civ. Code § 1639).  "The 'clear and explicit' meaning of these

provisions, interpreted in their 'ordinary and popular sense,' … controls judicial

interpretation." *Id.* (quoting Cal. Civ. Code § 1638).  "Interpretation of a contract

must be fair and reasonable, not leading to absurd conclusions.  The court must

avoid an interpretation which will make a contract extraordinary, harsh, unjust, or

inequitable." *Id.* (internal citations and quotations omitted).

RREEF's limited characterization of Settlement Agreement as the mere

exchange of promises to refrain from objecting to the other's project cannot be

reconciled with the actual terms of the agreement.  The more reasonable

interpretation—the one supported by the terms of the agreement—is that Plaintiffs

promised not to object to the Shopping Center Project because the Settlement

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

PLAINTIFFS' OPPOSITION BRIEF RE: LEGAL INTERPRETATION OF SETTLEMENT AGREEMENT

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1  Agreement gave them reasonable assurance that the project would track the Site

2  plan.  Several provisions evidence this clear intent.

3  First, as discussed, the Settlement Agreement was premised on RREEF's

4  agreement that if it elected to pursue the Shopping Center Project, the Site Plan

5  would form the basis of the Amended RREEF Application to be submitted to the

6  City:

> WHEREAS **RREEF is preparing to amend the RREEF Application to reflect a revised expansion plan for the Shopping Center as generally depicted in the … Site Plan, attached hereto as Exhibit E (the "Site Plan";** the expansion of the Shopping Center is hereafter referred to as "Shopping Center Project"; the amended RREEF Application, including any Environmental Information Form and corresponding entitlements, is hereafter referred to as the "Amended RREEF Application")

13  [Settlement Agreement, p. 3, ¶ 3 (emphasis added).][1]  Thus, even though RREEF

14  had discretion to amend the Site Plan, the Settlement Agreement gave Plaintiffs

15  assurance that the Shopping Center Project would be reasonably consistent with the

16  Site Plan.

17  Next, under section 4(a), Plaintiffs' promise not to object to RREEF's project

18  was tied directly to the Site Plan—not, as RREEF contends, to RREEF's reciprocal

19  promise to refrain from objecting to Plaintiffs' project (note the word "and" linking

20  the two clauses of this provision):

> 3500 Sepulveda has reviewed and consents to the Shopping Center Project as depicted in the Site Plan attached hereto as Exhibit E; and 3500 Sepulveda will not oppose the City's approval of the Shopping Center Project, except as otherwise provided herein.

24  [*Id.*, § 4(a).]

---

[1] It is irrelevant that this language appears in a recital.  Courts can and should look to recitals when necessary to interpret language in the body of the agreement. *See Golden West Baseball Co. v. City of Anaheim*, 25 Cal. App. 4th 11, 38 (1994). To state the obvious, the Settlement Agreement cannot be interpreted without recourse to the definitions of its major terms.

PLAINTIFFS' OPPOSITION BRIEF RE: LEGAL INTERPRETATION OF SETTLEMENT AGREEMENT

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1  Moreover, section 5 of the Settlement Agreement obligated RREEF to

2  provide any material revisions to the Site Plan to Plaintiffs for their "**review and**

3  **approval**" at least ten business days prior to submission to the City.  [*Id.*, § 5(c).]

4  This begs the question:  If RREEF was not obligated to follow the Site Plan in good

5  faith, what was the point of requiring it to submit material revisions for Plaintiffs'

6  "approval"?  RREEF will respond by pointing out that section 5(c) expressly

7  permitted them to submit material revisions to the City whether or not Plaintiffs

8  approved them, but that that still doesn't explain why the parties would include the

9  word "approval" in subsection (c) if, as RREEF contends, RREEF had absolute

10  discretion to amend the Site Plan.  The reasonable explanation, of course, is that

11  RREEF was obligated to make revisions in good faith, and Plaintiffs' approval

12  would operate as a bar to any later claim by Plaintiffs that RREEF's approved

13  revisions were made in bad faith.

14  The operative provisions of the Settlement Agreement do not resemble a

15  contract whose purpose was merely to "limit each party's right to object to the

16  other's project."  Rather, the primary purpose of the Settlement Agreement was to

17  resolve the parties' dispute over RREEF's Shopping Center Project by giving

18  Plaintiffs reasonable assurance that the project would not negatively impact it, in

19  exchange for which Plaintiffs agreed to cooperate as RREEF maneuvered the

20  entitlements process.

21  B.  **Unless Limited by the Implied Covenant of Good Faith and Fair
    Dealing, RREEF's "Sole and Absolute Discretion" to Amend the
22  Site Plan Would Render the Settlement Agreement Illusory.**

23  RREEF argues that as a matter of law it cannot have breached the Settlement

24  Agreement or any implied covenant of good faith and fair dealing by materially

25  altering the Site Plan because the agreement expressly gave it the "sole and absolute

26  discretion" to make changes to the Project Plans.  [*See* Opening Brief, p. 6:11–13 &

27  § IV.D.]  The problem with this argument is that, if RREEF truly could change the

28

11
PLAINTIFFS' OPPOSITION BRIEF RE: LEGAL INTERPRETATION OF SETTLEMENT AGREEMENT

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1    Site Plan in any way it wanted without any limiting force, then the term "Site Plan"

2    would be rendered hopelessly uncertain, meaningless, and illusory.

3         "The general rule is that [a]n agreement that provides that the price to be

4    paid, or other performance to be rendered, shall be left to the will and discretion of

5    one of the parties is not enforceable. This is because the party having such

6    discretion makes no real promise to pay or to perform." *Automatic Vending Co. v.*

7    *Wisdom*, 182 Cal. App. 2d 354, 357 (1960).  "An illusory promise is no promise at

8    all and is not a sufficient consideration for a return promise." *Id.*; *see Badie v. Bank*

9    *of America*, 67 Cal. App. 4th 779, 797 (1998).

10        However, "the fact that one of the parties reserves the power of varying the

11   price or other performance is not fatal if the exercise of this power is subject to

12   prescribed or implied limitations, as that the variation must be in proportion to

13   some objectively determined base or must be reasonable." *Automatic Vending Co.*,

14   182 Cal. App. 2d at 357.  "[I]t has long been the rule that a provision in an

15   agreement permitting one party to modify contract terms does not, standing alone,

16   render a contract illusory because the party with that authority may not change the

17   agreement in such a manner as to frustrate the purpose of the contract." *Serpa v.*

18   *California Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 706 (2013).  "Under

19   California law, an open term in a contract must be filled in by the party having

20   discretion within the standard of good faith and fair dealing." *Perdue v. Crocker*

21   *National Bank*, 38 Cal.3d 913, 924 (1985).  "Where a contract confers on one party

22   a discretionary power affecting the rights of the other, a duty is imposed to exercise

23   that discretion in good faith and in accordance with fair dealing." *Automatic*

24   *Vending Co.*, 182 Cal. App. 2d 354, 358.  "The implied covenant of good faith

25   prevents one contracting party from 'unfairly frustrating the other party's right to

26   receive the benefits of the agreement actually made.'" *Serpa*, 215 Cal. App. 4th

27   695, 706.

28

PLAINTIFFS' OPPOSITION BRIEF RE: LEGAL INTERPRETATION OF SETTLEMENT AGREEMENT

1    Here, by way of a hypothetical, RREEF's interpretation of the Settlement

2    Agreement would permit it to "amend" the Site Plan to reflect the construction of a

3    football field in the Shopping Center, or a zoo, or an airport, or a water park.  And

4    while RREEF would certainly face other developmental obstacles if it pursued

5    these extreme examples, RREEF would have to concede that, as far as the

6    Settlement Agreement is concerned, it would consider each of these to be a valid

7    exercise of its discretion to amend the Site Plan.  Thus, the parties' agreement that

8    the "Site Plan" would be submitted to the City was no agreement at all.  Under the

9    foregoing authorities, however, the Settlement Agreement would not be illusory

10    because RREEF's discretion would be limited by the implied covenant of good

11    faith and fair dealing.  In this regard, RREEF would be free to amend the Site Plan

12    as it saw fit—even materially so—so long as its exercise of discretion was

13    consistent with standards of good faith and fair play.

14    Absent some kind of limitation, RREEF's "unfettered discretion" to amend

15    the Site Plan also render the parties' releases hopelessly vague and uncertain.  In

16    their mutual releases, the parties release each other from claims relating to, among

17    other things, the "Shopping Center Project" and the "Amended RREEF

18    Application."  [Settlement Agreement, §§ 11–12.]  However, because these terms

19    are defined with reference to the Site Plan, the actual meaning of those terms would

20    necessarily depend on whatever "Site Plan" RREEF ultimately pursued.  In other

21    words, RREEF could effectively expand or contract the scope of released claims

22    depending on how it exercised its discretion to amend the Site Plan.  This would

23    render the releases fatally indefinite and uncertain.  *See Robinson & Wilson, Inc. v.*

24    *Stone*, 35 Cal. App. 3d 396, 407 (holding construction contract unenforceable

25    where it was too indefinite and uncertain as to the scope of work contemplated).[2]

26

27    [2] Notably, the Ninth Circuit already ruled that the release in Section 12 is
     ambiguous "as to (i) whether the release covers claims based on future events that
28    occur after the date of the Settlement Agreement, and (ii) if it does, whether those

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

13

PLAINTIFFS' OPPOSITION BRIEF RE: LEGAL INTERPRETATION OF SETTLEMENT AGREEMENT

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court find that RREEF's discretion under the Settlement Agreement to amend the Project Plans be subject to the implied covenant of good faith and fair dealing, and that Plaintiffs be permitted to present their claim for Breach of the Covenant of Good Faith and Fair dealing to the trier of fact.

DATED:  January 27, 2022                    HILL, FARRER & BURRILL LLP

By:    */s/ Jeffrey B. Bell*
      Jeffrey B. Bell
      Attorneys for Plaintiffs and Counter-
      Defendants 3500 Sepulveda, LLC
      and 13th & Crest Associates, LLC,
      and Counter-Defendant 6220 Spring
      Associates, LLC

HFB 2477742.4 T4501 002

later-arising claims include claims based on future versions of the Site Plan." *3500 Sepulveda, LLC v. Macy's West Stores, Inc.*, 980 F.3d 1317, 1327 (9th Cir. 2020).

14