**HILL, FARRER & BURRILL LLP**
Kevin H. Brogan (Bar No. 089427)
kbrogan@hillfarrer.com
Dean E. Dennis (Bar No. 112616)
ddennis@hillfarrer.com
Stephen J. Tomasulo (Bar No. 181013)
stomasulo@hillfarrer.com
One California Plaza
300 S. Grand Avenue, 37th Floor
Los Angeles, California 90071-3147
Telephone: 213.620.0460
Fax: 213.624.4840

Attorneys for Plaintiffs/Counter-Defendants
3500 SEPULVEDA, LLC and 13th & CREST
ASSOCIATES, LLC, and Counter-Defendant
6220 SPRING ASSOCIATES, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3500 SEPULVEDA, LLC, a Delaware limited liability company; and 13th & CREST ASSOCIATES, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>RREEF AMERICA REIT II CORPORATION BBB, a Maryland corporation, et al.,<br><br>Defendants.<br><br>RREEF AMERICA REIT II CORPORATION BBB, a Maryland corporation<br><br>Counter-Claimant,<br><br>3500 SEPULVEDA, LLC, a Delaware limited liability company, at al.<br><br>Counter-Defendants. | Case No. 2:17-cv-08537-AFM<br><br>**PLAINTIFFS' POST-TRIAL REPLY BRIEF RE RREEF'S VIOLATION OF THE COREA**<br><br><br>Date Action Filed: October 11, 2017 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................ 4
II. ARGUMENT ....................................................................................................... 5
   A. The Court Cannot Disregard Decades Of Lot F Parking ..................... 5
   B. The COREA Does Not Provide For Parking Structures In The Common Area Absent A Condemnation That Materially Reduces The Potentially Available Space For Parking ........................ 9
   C. RREEF Unreasonably Interfered With Plaintiffs' Rights By Dramatically Increasing Parking Demand While Reducing Historically Available Proximate Parking Spaces Near The Hacienda Building .................................................................................. 11
   D. RREEF's Expert Relied On Dated And Generic National Standards In Forming His Opinion That Parking Is Adequate For the Hacienda Building. ............................................................... 12
   E. Damaging The Value Of The Hacienda Building By Obscuring Its View From The Rest Of The Shopping Center Can Constitute Unreasonable Interference With Plaintiffs' Rights Under The COREA. .......................................................................... 13
   F. RREEF's Post-Project Amendment To The COREA Illustrates Its Disregard For Plaintiffs' Rights. ..................................................... 14
   G. There Is No Impediment to RREEF Dedicating The Remaining Surface Level Parking Spaces To The Hacienda Building ................. 15
III. CONCLUSION ................................................................................................. 15

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dolnikov v. Ekizian*,
 222 Cal. App. 4th 419..................................................................................9, 13

*Southern California Edison Co. v. Severns*,
 39 Cal. App. 5th 815 (2019).................................................................................7

*Winslow v. City of Vallejo*,
 148 Cal. 723 (1906).............................................................................................5

*Youngstown Steel Products Co. of Cal. V. City of Los Angeles*,
 38 Cal.2d 407.......................................................................................................7

*Zissler v. Saville*,
 29 Cal. App. 5th 630 (2018)............................................................................6, 8

## I. INTRODUCTION

One of the overriding themes and the principal cause of this ongoing dispute is RREEF's insistence that it has the unfettered right to do whatever it pleases in the Shopping Center, regardless of its impact on Plaintiffs. In its ruling on RREEF's motion for partial summary judgment, the Court noted and rejected RREEF's position:

> According to Defendants, the COREA did in fact give them the unfettered right to change the Common Area, so long as they maintained 1957 parking spaces within the Common Area – even if they were to move those spaces a mile away from the Hacienda Building, destroying much of the commercial value of the property by rendering the spaces practically unavailable to Plaintiffs' tenants. This broad-sweeping interpretation of the COREA cannot be squared with the easement principles set forth in *Dolnikov*. (Doc. 165, p. 8, FN 3).

Despite this admonition, RREEF's position does not seem to have changed. RREEF asserts that:

- RREEF can ignore the historical use when deciding where to relocate parking spaces, despite the general language of the easement grant;
- RREEF can build parking structures in the Common Areas notwithstanding that doing so is inconsistent with the language in the COREA;
- RREEF can drastically expand retail space and thereby increase parking demand while reducing the available surface parking for the Hacienda Building;
- RREEF can rely on dated studies and generic national standards in determining whether Plaintiffs' parking needs have been met;

- RREEF can completely obscure the view of the Hacienda Building from the shoppers in the remainder of the Shopping Center; and,

- RREEF can amend the COREA after construction has been completed without notice to or consent from Plaintiffs.

The only thing RREEF seems to believe it cannot do is the one thing that could have prevented this whole dispute, which is dedicating the remaining surface level parking spaces near the North Deck to Plaintiffs. As discussed below, RREEF is incorrect on each of these positions and Plaintiffs respectfully submit that RREEF has unreasonably interfered with their rights under the COREA.

## II. ARGUMENT

### A. The Court Cannot Disregard Decades Of Lot F Parking

RREEF contends the Court must disregard the nearly four decades the Hacienda Parties enjoyed open surface level parking and the historical parking ratios in Lot F when interpreting Plaintiffs' easement rights. RREEF makes two primary arguments in this regard. First, RREEF argues that the COREA broadly, and section 2.1 specifically, are stated in specific rather than general terms such that historical use should be ignored. [Opp. § II.A.1 & II.A.2] Second, RREEF contends that because other provisions of the COREA give RREEF the right develop the Common Area, RREEF has the unfettered right to change the parking conditions so long as the minimum spaces are available. Neither argument has merit.

First, in arguing that the Court should ignore Plaintiffs' historical use because the COREA is stated in specific terms, RREEF is performing a sleight of hand. [*See* Opp. at § II.A.1 (titled "The *COREA* is Stated in Specific, Unambiguous Terms…").] The proper inquiry for the Court is not whether the *COREA* is stated in general rather than specific terms, but rather whether the primary *grant of easement* is stated in general or specific terms. *Winslow v. City of Vallejo*, 148 Cal. 723, 725 (1906) ("The rule is well settled that where *a grant of an easement* is

general as to the extent of the burden to be imposed on the servient tenement, an exercise of the right, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to the particular course or manner in which it has been enjoyed." (emphasis added)); *see* Plaintiff's Opening Brief (ECF No. 216) at pp. 19:24–20:13.  Indeed, the COREA is a lengthy document containing myriad provisions having nothing to do with the grant of easement at issue.

Here, the primary grant of easement is found in section 2.1 of the COREA, which broadly grants Plaintiffs an easement for "for the accommodation of pedestrians and vehicles, on such portions of such Common Areas as are set aside, maintained and authorized for such use …." [COREA § 2.1.]  There can be little dispute that this language constitutes a "general" rather than a "specific" description of the location and extent of the parking easement.  One need only look to RREEF's Opposition—or more accurately, what is *not in* RREEF's Opposition—to understand its generality:  nowhere in RREEF's 29-page Opposition does it identify the specific "portions" of the Common Area over which Plaintiffs' easement rights exist, or the nature of the "accommodations" Plaintiffs may make on those undefined portions of the Common Area.

RREEF principally relies on *Zissler v. Saville*, 29 Cal. App. 5th 630 (2018) in support of its contention that the grant here is specific, but the grant in that case is plainly distinguishable.  In *Zissler*, there was no doubt about the nature and location of the easement, which granted a right-of-way for ingress and egress across "the most easterly portion of Grantors' real property" with a width of 10 feet and length of 90.46 feet.  *Id.* at 635; *see id.* at 642 ("[H]ere there is no dispute as to the usable portion of the easement. The entire 10′ x 90′ strip of land subject to the easement may be used for ingress and egress.").  Here, by contrast, Section 2.1 is more akin to a "floating easement," with no limitation as to area or extent of use. California law is clear that in such cases, historical use fixes the nature, extent, and location of

the easement. *See, e.g.*, *Southern California Edison Co. v. Severns*, 39 Cal. App. 5th 815, 823 (2019) ("An easement granted in general terms, nonspecific as to its particular nature, extent or location, is ... perfectly valid…. The use actually made by the holder over a period of time fixes the location and the nature and extent of the use.").

RREEF also argues that the Court should ignore Plaintiffs' historical use of Lot F because the COREA gives the Prime Parties the right to develop the Common Area. Citing *Youngstown Steel Products Co. of Cal. V. City of Los Angeles*, 38 Cal.2d 407, RREEF contends that parties are free to create an easement that cannot be fixed by use. [Opp. at 10:19–25.] Plaintiffs point to sections 1.4 and 2.1 of the COREA, arguing that the COREA "vests the Prime Parties with the power to set aside portions of the Common Area 'for the passage and accommodation of pedestrians and vehicles' by giving the Prime Parties sole approval regarding construction of Floor Area in the Common Area." [Opp. at p. 9:23–28; *see id*. at p. 7:10–17 (contending that the COREA gives the Prime Parties "exclusive rights to determine what portions of the Common Area are to be used for parking.").]

However, nothing in Sections 1.4 or 2.1 actually grants RREEF the right to exclusively determine what portions of the Common Area are to be set aside for parking. Section 1.4 defines "Common Area" with reference to Exhibit B of the COREA and notes that it includes the "Automobile Parking Area." But Section 1.4 says nothing of RREEF's right to select the location, nature, or extent of Plaintiffs' parking easement, nor does it state that the parking easement cannot be fixed by use.

Nor does Section 2.1 give RREEF the right to change the location of Plaintiffs' parking easement. As discussed, Section 2.1 grants broadly grants Plaintiffs an easement for "for the accommodation of pedestrians and vehicles, on such portions of such Common Areas as are set aside, maintained and authorized for such use …." [COREA § 2.1] As with Section 1.4, however, Section 2.1 says

nothing of RREEF's right to select the location, nature, or extent of Plaintiffs' parking easement.

In its lengthy footnote 1, RREEF cites myriad provisions throughout the COREA purportedly giving the Prime Parties approval over the design, construction, and reconstruction of certain areas of the Shopping Center. [Opp. at p. 7, fn. 1.] But again, none of the cited provisions grants RREEF the authority to select or change the location or nature of Plaintiffs' parking easement rights. [*See id.*]

The fact that the parties contemplated the natural development of the Shopping Center does not change the outcome. [Opp. at p. 10:23–25.] Here again, RREEF's reliance on *Zissler* is misplaced. As *Zissler* explains, there is a difference between a general grant of a right of way—which is to be construed as connecting the dominant tenement for all reasonable purposes and with all normal future development considered—and the grant of an easement for parking over an unspecified portion of the servient tenement. *Zissler*, 29 Cal. App. 5th at 640–642. Indeed, *Zissler* distinguished *Rye* for the very reason that *Rye* dealt with a parking easement as opposed to a general grant of ingress and egress. *Id.* at 642 ("*Rye* is distinguishable. It does not discuss the ingress-egress aspect of the easement…. In *Rye*, the dispute between the parties concerned the portion of the area subject to the easement that could be used for parking and storage.").

This is not a case about a simple easement for ingress and egress, in which the parties presumptively would have considered all future development of the easement. *Id.* at 641. While the COREA plainly contemplates future development of the Common Area, the question here is—as it always has been—whether RREEF has the unfettered right to interfere with Plaintiff's easement rights when (1) no provision of the easement grants RREEF the right to change the location of Plaintiffs' parking easement (2) the easement is stated in general terms without identifying the nature or location of the parking, (3) Plaintiffs have used the

easement for flat, surface level parking for decades, and (4) the changes made by RREEF increase parking demand, reduce the quantity of parking spaces, all together materially impact Plaintiffs' use.

It is axiomatic that the grant of an easement must be interpreted liberally in favor of the grantee. *Dolnikov v. Ekizian*, 222 Cal. App. 4th 419, 428. RREEF scoffs at the substantial changes it made to Plaintiffs' parking, contending that "Building the North Deck in an area formerly occupying a surface lot merely changed the *form* of parking from surface to structured, while expressly maintaining the purpose of the easement—parking and pedestrian accessibility." [Opp. at p. 12:13–17.] One could equally argue that requiring patrons of the restaurant on the 71st floor of the U.S. Bank Tower to take the stairs as opposed to the elevator is likewise merely in change in the form of access—after all, everyone still makes it to the restaurant eventually. But to do so ignores the obvious burdens imposed by that change in "form."

The Expansion Project fundamentally changed the Hacienda Building's easement to the great detriment of the Hacienda Building. As built, the Expansion Project fundamentally and unreasonably interferes with the way Hacienda customers have historically accessed the Hacienda property. Plaintiffs respectfully submit that they should prevail on their claims as the evidence shows that the Expansion Project unreasonably interferes with their easement rights.

  **B. The COREA Does Not Provide For Parking Structures In The Common Area Absent A Condemnation That Materially Reduces The Potentially Available Space For Parking**

Section 16.4 is a condemnation clause which would apply if a government agency condemned a portion of the Automobile Parking Area. In essence, it provides that if the taking reduces parking below eighty percent (80%) of the number of spaces, a Prime Party can terminate the COREA. Section 16.4 provides that if a Prime Party desires not to terminate, it can submit plans for "alternative

parking facilities" to increase the number of spaces to eighty percent or above the required number of spaces. Section 16.4 states: "Any parking structure required to be constructed in conjunction with such increased parking spaces shall be paid for by the Prime Party so objecting, at its sole cost and expense."

Thus, Section 16.4 provides that if there is a government taking that results in a reduction of the Automobile Parking Area *that is material enough to trigger termination of the COREA*, termination may be avoided by the construction of a parking structure. *This is the only reference to a "parking structure" in the COREA*. The COREA does not allow for the construction of a parking structure absent such a material and significant change to the available surface area of the Automobile Parking Area.

If the parties to the COREA wanted to allow parking structures in the Common Area in the absence of a material taking, they could have specifically authorized that. But they did not do so. They only authorized parking structures in the event of a significant taking instigated by a third party government agency. This intent is consistent with Plaintiffs' expert Warren Vander Helm's testimony that multi-level parking is far less desirable than surface parking. Although there is no specific evidence of the parties' original intent, it is reasonable to conclude that they did not want to allow parking structures absent a taking that made them necessary.

RREEF argues that the reference to "parking structure" in Section 16.4 is merely a cost allocation provision. Plaintiffs concede that Section 16.4 addresses cost allocation issues. But RREEF does not dispute – nor can it - that Section 16.4 contains the only reference to "parking structure" in the COREA. RREEF argues that its right to build parking structures can be inferred from various provisions in the COREA but does not provide any meaningful attempt to answer this obvious question: *Why does the COREA specifically authorize parking structures in the event of a substantial condemnation but does not do so outside of that context?* The

10

logical answer is that the parties did not intend to allow parking structures outside of that scenario and Plaintiffs submit that this is the interpretation the Court should adopt. The Court should accordingly hold that RREEF unreasonably interfered with Plaintiffs' rights under the COREA by replacing surface level parking with parking structures.

### C. RREEF Unreasonably Interfered With Plaintiffs' Rights By Dramatically Increasing Parking Demand While Reducing Historically Available Proximate Parking Spaces Near The Hacienda Building.

As explained in Plaintiffs' initial post-trial brief, the Expansion Project fundamentally changed the parking situation for the Hacienda Building. The Expansion Project added 45,000 feet of new retail space in the Village Shops adjacent to Lot F and expanded Macy's by 60,000 square feet, which creates significant additional demand for parking in and around Lot F. Instead of increasing available parking to match the increased demand, the Expansion Project removed six parking spaces Lot F, reducing the supply from 477 to 471. Only, 86 of the historical 477 outside, ground level parking spaces remain. Defendants attempted to make up for this dramatic reduction and increased demand by erecting a three level enclosed parking garage (the North Deck, with 385 spaces) in Lot F to the east of the Hacienda building. With the increased demand and reduced supply in and around Lot F, RREEF has interfered with Hacienda's parking easement rights.

Mr. Vander Helm explained that the post-Project enclosed, multi-level parking spaces are far less desirable than open ground-level spaces and are not adequate replacements for open ground-level spaces. The Expansion Project negatively impacted the available parking for the Hacienda Building and thereby decreased its value. Plaintiffs submit that RREEF should have to compensate Plaintiffs for that decrease.

**D.     RREEF's Expert Relied On Dated And Generic National Standards In Forming His Opinion That Parking Is Adequate For the Hacienda Building.**

RREEF's expert Patrick Gibson did not challenge Mr. Vander Helm's primary conclusion that the post Project multi-level parking spaces are undesirable and are inadequate replacements for the open surface level parking spaces that existed in Lot F prior to the Expansion Project.  Instead, he offered a general opinion that the parking for the Hacienda Building satisfies some dated national standards for retail establishments.  Mr. Gibson claims to have co-authored the First and Second Editions of Shared Parking.  The evidence shows that, in reality, he did nothing more than submit a site study.  Both editions recommend a ratio of 4.1 parking spaces per 1000 feet of retail space for developments across the country.  Mr. Gibson claims to have performed multiple studies (in 2001, 2006 and 2010) of the specific parking needs for the Village Center but none of those studies ever deviated from the 4.1 national ratio recommended by the First and Second Editions of Shared Parking.

RREEF argues that Mr. Gibson's steadfast adherence to the 4.1 to 1,000 ratio for parking is based upon his vast experience.  The expansion project as proposed in 2010 changed from that version of the plans to what was actually built in 2019, yet he still stuck with his 4.1 ratio.  The Third Edition of Shared Parking was published in 2010 and recommended a baseline parking ratio of 4.5 spaces per 1000 square feet of leased space, which would need to be adjusted upward here given that over ten percent (10%) of the floor area was restaurant space, which Gibson agreed created a much higher demand than office and other retail uses.  Mr. Gibson offered no coherent explanation as to why he failed to consider or apply the higher ratio recommended by the Third Edition or how he compensated for the amount of restaurant space in the Shopping Center.

As explained in Plaintiffs' initial brief, Mr. Gibson applied similar dated

national standards in determining how far from the Hacienda Building patrons would be willing to park. Given the holes in his studies, his opinion is entitled to little weight.

### E. Damaging The Value Of The Hacienda Building By Obscuring Its View From The Rest Of The Shopping Center Can Constitute Unreasonable Interference With Plaintiffs' Rights Under The COREA.

*Dolnikov v. Ekizian*, 222 Cal. App. 4th 419 (2013) is a case relied upon by the Court in its ruling on RREEF's motion for partial summary judgment. The *Dolnikov* Court held that the rule of reason states that "the servient owner may use his property in any manner not inconsistent with the easement so long as it does not *unreasonably impede* the dominant tenant in his rights." *Id.* at 429 (emphasis in original). "Actions that make it *more difficult to use an easement*, that interfere with the ability to maintain and repair improvements built for its enjoyment, or that increase the risks attendant on exercise of rights created by the easement are prohibited …." *Id.* (emphasis added). In considering whether there has been actionable interference, "the interests of the parties must be balanced to strike a reasonable accommodation that maximizes overall utility to the extent consistent with effectuating the purpose of the easement ... and subject to any different conclusion based on the intent or expectations of the parties... ." *Id.* at 430.

The COREA provides Plaintiffs with the right to parking spaces for their tenants. *Dolnikov* makes it clear that RREEF cannot take actions that make it more difficult for Plaintiffs to enjoy the benefits of that right. By reducing the quantity and increasing the demand, and then replacing surface level parking with multi-level parking, RREEF has interfered with that right. Plaintiffs submit that open visibility of the building is a necessary component of Plaintiffs' rights and that RREEF's obstruction of the Hacienda Building from sight from the rest of the Shopping Center clearly and unreasonably interferes with the enjoyment of that

right and decreased the value of the Hacienda Building.

### F. RREEF's Post-Project Amendment To The COREA Illustrates Its Disregard For Plaintiffs' Rights.

On or about October 1, 2021, *after the Expansion Project was completed*, RREEF and Macy's entered into the First Amendment to the COREA (the "Amendment"), referred to in the parties' Joint Stipulated Fact No. 13 (ECF No. 183). The Hacienda Parties were not given notice of, were not asked to sign and did not sign the Amendment. The Amendment was recorded by the Los Angeles County Recorder on December 7, 2021. Presumably this amendment was intended to address the changes implemented in the Expansion Project but it unfairly creates uncertainty as to the rights of the owners of the Hacienda Building or any potential buyer of the building.

The post-project amendment is unfair to Plaintiffs for at least the following reasons:

- Plaintiffs appear to have been written out of the notice provisions;
- The amendment refers 17 times to a controlling July 16, 2016 separate agreement between RREEF and Macy's which was not recorded and has not been provided to Plaintiffs;
- The amendment removes many of the protections Plaintiffs enjoy under the original COREA, including many of the provisions listed in RREEF's footnote 1; and,
- RREEF cannot amend the COREA in a way that affects Plaintiffs without their consent (Article 26.1).

It is unclear to Plaintiffs and any prospective buyer of the Hacienda Building what rights they currently enjoy, given the existence of the COREA, the amendment and the secret separate agreement. This uncertainty may diminish the value of the Hacienda Building.

### G. There Is No Impediment to RREEF Dedicating The Remaining Surface Level Parking Spaces To The Hacienda Building

There are three parties to the COREA: RREEF, Macy's and Plaintiffs. RREEF and Macy's collaborated on and benefitted from the Expansion Project. With Plaintiffs' consent, which would surely be granted, they certainly have the right to amend the COREA to dedicate surface level parking spaces to the Hacienda Building. (COREA, Article 26.1). Doing so would likely have prevented this entire litigation. It is telling that this is the one thing RREEF claims to not have the authority to do. This unwillingness to dedicate parking spaces is an implicit admission that open surface level spaces and enclosed multi-level spaces are not fungible; open surface level spaces are vastly superior, as testified to by Mr. Vander Helm. By removing the vast majority of those spaces from Lot F, RREEF unreasonably interfered with Plaintiffs' easement rights.

### III. CONCLUSION

For the reasons stated above and in Plaintiffs' initial brief, Plaintiffs respectfully submit that they should prevail on their claims for interference with their rights under the COREA.

DATED: July 15, 2022                                HILL, FARRER & BURRILL LLP

By: */s/ Stephen J. Tomasulo*
    Kevin H. Brogan
    Dean E. Dennis
    Stephen J. Tomasulo
    Attorneys for Plaintiffs and Counter-Defendants 3500 Sepulveda, LLC and 13th & Crest Associates, LLC, and Counter-Defendant 6220 Spring Associates, LLC

HFB 2322121.1 T4501 002