**HILL, FARRER & BURRILL LLP**
Kevin H. Brogan (Bar No. 089427)
kbrogan@hillfarrer.com
Dean E. Dennis (Bar No. 112616)
ddennis@hillfarrer.com
Stephen J. Tomasulo (Bar No. 181013)
stomasulo@hillfarrer.com
One California Plaza
300 S. Grand Avenue, 37th Floor
Los Angeles, California 90071-3147
Telephone:  213.620.0460
Fax:  213.624.4840

Attorneys for Plaintiffs/Counter-Defendants
3500 SEPULVEDA, LLC and 13th & CREST
ASSOCIATES, LLC, and Counter-Defendant
6220 SPRING ASSOCIATES, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3500 SEPULVEDA, LLC, a Delaware limited liability company, et al.<br><br>Plaintiff,<br><br>v.<br><br>RREEF AMERICA REIT II CORPORATION BBB, a Maryland corporation; MACY'S WEST STORES, INC; and Does 1-25, inclusive,<br><br>Defendants.<br><br>RREEF AMERICA REIT II CORPORATION BBB, a Maryland corporation<br><br>Counter-Claimant,<br><br>3500 SEPULVEDA, LLC, a Delaware limited liability company, et al.<br><br>Counter-Defendants. | Case No. 2:17-cv-08537-AFM<br><br>**MOTION FOR LEGAL DETERMINATION THAT THE HACIENDA PARTIES' ALLEGED CONDUCT CANNOT CONSTITUTE A BREACH OF THE SETTLEMENT AGREEMENT**<br><br>Date Action Filed:  October 11, 2017 |

*(left margin, vertical text)* HILL, FARRER & BURRILL LLP · A LIMITED LIABILITY PARTNERSHIP · ATTORNEYS AT LAW · ONE CALIFORNIA PLAZA · 300 S. GRAND AVENUE, 37TH FLOOR · LOS ANGELES, CALIFORNIA 90071-3147

1

**TABLE OF CONTENTS**

2

**Page**

3    I.    INTRODUCTION ........................................................................... 4

4    II.    BACKGROUND AND INTERPRETATION OF SETTLEMENT
       AGREEMENT ............................................................................... 4

5    III.    BASED UPON RREEF AMERICA'S MATERIAL ALTERATIONS
       TO THE SITE PLANS APPROVED BY THE HACIENDA
6       PARTIES, THE HACIENDA PARTIES WERE PERMITTED TO
       CHALLENGE RREEF'S PLANS. ................................................. 8

7    IV.    THE LITIGATION PRIVILEGE BARS RREEF'S
8       COUNTERCLAIMS. ..................................................................... 10

9       A.    The Ninth Circuit's Ruling, Olson v. Doe, and O'Brien & Gere
          Eng'rs, Inc. v. City of Salisbury ........................................... 11

10          1.    *3500 Sepulveda* ....................................................... 11

11          2.    *Olson v. Doe* ............................................................ 12

          3.    *O'Brien* .................................................................... 15

12       B.    The Litigation Privilege Bars RREEF's Claims. ................ 16

13    V.    CONCLUSION .............................................................................. 18

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR LEGAL DETERMINATION THAT THE HACIENDA PARTIES' ALLEGED CONDUCT CANNOT CONSTITUTE A
BREACH OF THE SETTLEMENT AGREEMENT

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1

# TABLE OF AUTHORITIES

2                                                                                    **Page**

3    **Cases**

4
*3500 Sepulveda, LLC v. Macy's West Stores, Inc.*,
5        980 F.3d 1317 (9th Cir. 2020) ........................................................ 10, 11, 12, 15

6    *Asia Investment Co. v. Borowski*,
7        133 Cal. App. 3d 832 (1982) ................................................................. 11

8    *Cayley v. Nunn*,
9        190 Cal. App. 3d 300 (1987) ................................................................. 11

10   *Gaunt v. Prudential Ins. Co.*
         255 Cal.App.2d 18 (1967) ..................................................................... 17
11

12   *O'Brien & Gere Engineers v. City of Salisbury*,
         447 Md. 394 [135 A.3d 473] (2016) ...................................................... 14, 15, 16
13

14   *Olson v. Doe*,
         12 Cal.5th 669 (2022) ................................................................... *passim*
15

16   *Scott v. McDonnell Douglas Corp.*,
         37 Cal. App. 3d 277 (1974) ................................................................... 11

17   **Statutes**

18   Cal. Civ. Code § 47 ................................................................................. 4, 11

19

20

21

22

23

24

25

26

27

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

MOTION FOR LEGAL DETERMINATION THAT THE HACIENDA PARTIES' ALLEGED CONDUCT CANNOT CONSTITUTE A
BREACH OF THE SETTLEMENT AGREEMENT

## I.    INTRODUCTION

Defendant and Cross-Complainant RREEF America REIT II Corp. BBB ("RREEF America") asserts three claims against Plaintiffs and Cross-Defendants 3500 Sepulveda LLC, 13, Crest Associates LLC  and 6220 Spring Associates LLC ("Hacienda Parties") arising from an October 8, 2008 settlement agreement ("Settlement Agreement")[1] between the parties: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (3) Declaratory Relief.

All of the claims are based on the premise that the Hacienda Parties breached the Settlement Agreement by protesting RREEF America's project to expand the Manhattan Village Shopping Center ("Project") to the City of Manhattan Beach, filing a writ petition in court and playing a role in a CEQA action that challenged the Project.  (See RREEF's Memorandum of Contentions of Law and Fact (Doc. 172 on the Court's Docket, p. 15-20).   The Hacienda Parties respectfully submit that, in light of this Court's March 1, 2022 Order (Doc. 197 in the court's docket) ("March Order"), the Hacienda Parties' alleged conduct, even if proven, does not breach the Settlement Agreement.  All of the alleged conduct was permitted under the Settlement Agreement because RREEF materially deviated from the site plan for the Project agreed to in the Settlement Agreement.  Moreover, in light of the California Supreme Court's recent decision in *Olson v. Doe*, 12 Cal.5th 669 (2022), the Hacienda Parties have not waived the privilege afforded by Civil Code Section 47 which is a complete defense to RREEF America's claims.

## II.    BACKGROUND AND INTERPRETATION OF SETTLEMENT AGREEMENT

In the March Order, this Court has extensively analyzed the background,

---

[1] The Settlement Agreement is attached as Exhibit A to the January 20, 2022 Declaration of Sarah F. Mitchell (Doc. 182-1 on this Court's Docket).

4

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

purpose and interpretation of the Settlement Agreement.  In that order, the Court described the background and purpose of the Settlement Agreement as follows:

> In 2006, RREEF undertook a redevelopment project that
> included plans to renovate and expand the Shopping
> Center.  RREEF applied to the City of Manhattan Beach
> (the "City") for approval of the Project.  Around the same
> time, Plaintiffs were attempting to convert parts of the
> Hacienda Building from office space to restaurant space.
> Both RREEF's project and Plaintiffs' conversion required
> approval from the City, a process which allowed for
> public comment and opposition/support.  RREEF and
> Hacienda opposed each other's plans for renovation, and
> various legal disputes arose.  In 2008, the parties entered
> into the Agreement to resolve those disputes.

[March Order, p. 2.]

The March Order reflects that the parties agreed to a site plan for the Project attached as Exhibit E to the Settlement Agreement and that the Hacienda Parties would not object to or challenge the Project so long as it tracked the site plan:

> In subsection (a), it is stated that Plaintiffs have reviewed
> the Shopping Center Project as depicted in the Site Plan
> attached as Exhibit E to the Agreement, Plaintiffs consent
> to the Project as so depicted, and Plaintiffs will not
> oppose the City's approval of the Shopping Center Project
> except as otherwise provided in the Agreement.  It is also
> acknowledged that "such Site Plan and the RREEF
> Application for the Shopping Center Project may be
> amended from time to time consistent with the obligations

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1          provided herein.  If such amendments materially affect

2          the Hacienda Building, its tenants, and/or [Plaintiffs],

3          RREEF agrees to advise [Plaintiffs] of the amendments.

4 [*Id.* at p. 4.]

5      The Court also explained that RREEF could pursue a project that materially

6 differed from the site plan but the Hacienda Parties retained their right to challenge

7 any such project:

8          The Agreement reflects that the parties intended to

9          facilitate City approval of a specific version of each

10          party's proposed project by limiting the ability to object

11          to said projects, *so long as they remained within the*

12          *confines set out in the Agreement.  With respect to*

13          *RREEF's Shopping Center Project, Plaintiffs essentially*

14          *consented to a project as depicted in the attached Site*

15          *Plan and agreed that they would not oppose the City's*

16          *approval of the Project unless there were either changes*

17          *to the Site Plan that were materially determinantal to*

18          *Hacienda Building or material revisions to the 2008*

19          *project plan and portions of North Deck parking that*

20          *Plaintiffs had not approved.*  (See Agreement Sections 4a,

21          4c, 4f, 4g, 5c).  Nothing in the Agreement obligated

22          RREEF to proceed with a Project that reasonably

23          complied with the Site Plan approved by Plaintiffs or to

24          obtain Plaintiffs' approval prior to proceeding with a

25          materially different plan.  That is, Plaintiffs did not

26          bargain for or receive a substantive right over RREEF's

27          property such that they were granted the right to prevent

28

6

1    RREEF from pursuing a development project that was

2    completely different from the one contemplated by the

3    Site Plan.  The Agreement makes clear that the contrary is

4    true. *Plaintiffs retained the right to object to a project*

5    *application that deviated materially from the Site Plan*,

6    but the failure of Plaintiffs to approve of the project did

7    not preclude RREEF from applying to the City for

8    approval for such a project.  (Agreement Section 5c.)  If

9    the Agreement allows RREEF to apply for a project

10    whether or not it conforms to the Site Plan, it necessarily

11    allows RREEF to pursue such a project if it obtained

12    approval - assuming the project did not violate some other

13    right of Plaintiffs, such as their rights under the COREA.

14    [*Id*. at p. 8– 9.  *(emphasis added.)*]

15        The March Order explains that the Hacienda Parties' agreement not to

16    challenge the Project was conditioned on RREEF not making material changes to

17    the site plan:

18    The foregoing interpretation of the Agreement is

19    supported by numerous individual provisions, as well as a

20    reading of the document as a whole.  The Recitals make

21    clear that the purpose of the Agreement was to resolve

22    disputes related to conversion of the Hacienda Building to

23    restaurant space and the Shopping Center Project.  The

24    Agreement is explicit in providing that it was not intended

25    to affect the rights of either party with respect to the use

26    of their property, including the right to seek "additional

27    entitlements from the city not specified herein."

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

7

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

(Agreement Section 3.)  The Agreement includes multiple provisions explicitly granting RREEF the "sole and absolute discretion" to revise the site plan and does not purport to limit those revisions to "non-material" changes. Section 5 begins with: "If RREEF pursues the Shopping Center Project as shown on the Site Plan, receives approval from the City for the Shopping Center Project including the North Deck and/or proceeds to construct the North Deck, the Parties agree to the following:" *Thus, the provisions that follow apply only if RREEF pursued the project as depicted in the attached Site Plan.*

[*Id.* at p. 9 (emphasis added).]

The Court further explained:

Given this language and structure, the Agreement must be interpreted to allow that RREEF might not pursue the proposed project and might pursue a completely different project - in which case the Agreement would not prevent objection by Plaintiffs.

[*Id.*]

The March Order makes clear that the Hacienda Parties' agreement to refrain from challenging the Project was conditioned on RREEF proceeding in a manner that tracked the site plan attached to the Settlement Agreement.

## III.    BASED UPON RREEF AMERICA'S MATERIAL ALTERATIONS TO THE SITE PLANS APPROVED BY THE HACIENDA PARTIES, THE HACIENDA PARTIES WERE PERMITTED TO CHALLENGE RREEF'S PLANS.

There is no dispute that the Project as built deviates materially from the Settlement Agreement's site plan that was approved by the Hacienda Parties.  The site plan agreed to in the Settlement Agreement called for a two level parking

8

structure (one subterranean and one ground level) to be built in Lot F immediately adjacent and to the east of the Hacienda Building.  With that structure, the site plan called for a total of 620 parking spots in and adjacent to Lot F.  The agreed site plan would have added 4.33 parking spaces for every 1,000 square feet of retail. (Neumann Dec., ¶ 6).

The Project as built materially deviated from the agreed site plan.  As built, the Project added a *three story* parking structure and resulted in only 477 parking spaces in and adjacent to Lot F.  As built, the Project removed .19 parking spaces per square feet of retail.  These are clearly material changes.  (Neumann Dec., ¶ 7).

RREEF began advising the Hacienda Parties of those changes as early as June of 2010.  The Hacienda Parties were provided with a revised site plan on June 2, 2010 which changed the structure from two to three stories.  (Neumann Dec., ¶ 8, Exh. 1, p. 2).

On August 3, 2010, the Hacienda Parties received a letter from RREEF advising them that their revised plans would remove 113 parking spaces from the 620 contemplated in the agreed site plan.  This letter included revised site plans reflecting this change.  (Neumann Dec., ¶ 9, Exh. 2).

At a June 27, 2012 Planning Commission Hearing, RREEF presented a plan that reduced the parking spaces in Lot F to just 354 and changed the parking structure from two to three levels.  (Neumann Dec., ¶ 10, Exh. 3, p. 14).

At an April 24, 2013 Planning Commission hearing, RREEF presented a plan that called for just 487 parking spaces in and adjacent to Lot F.  (Neumann Dec., ¶ 11, Exh. 4, p. 4)

The Hacienda Parties submit that there is no dispute that RREEF materially deviated from the site plan as early as June 2010 and never returned from that material deviation.  Consistent with the Settlement Agreement and the March Order, the Hacienda Parties were accordingly free to object to and challenge the

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

9

1   Project, both in court and before the City.  This permitted conduct forms the basis

2   of all of RREEF's claims under the Settlement Agreement and those claims

3   therefore fails as a matter of law.

4

5   **IV.    THE LITIGATION PRIVILEGE BARS RREEF'S**
    **COUNTERCLAIMS.**

6

7          In October of 2018, the trial court granted the Hacienda Parties' motion for

8   summary judgment as to RREEF's counterclaims, finding they were barred by the

9   litigation privilege.  [ECF No. 95.]  On appeal, the Ninth Circuit reversed the trial

10  court in *3500 Sepulveda, LLC v. Macy's West Stores, Inc.*, 980 F.3d 1317 (9th Cir.

11  2020), finding that California appellate courts apply the privilege to contract claims

12  only "in limited situations where its application furthers the policies underlying the

13  privilege," and holding policy disfavored application of the privilege in this case

14  because the Hacienda Parties "willingly limited [their] communications under the

15  Settlement Agreement."  *Id.* at 1327 (internal quotations omitted).

16         When the Ninth Circuit ruled, however, it noted the absence of California

17  Supreme Court authority on the question of the litigation privilege's application to

18  contract claims and acknowledged its holding could be negated if California

19  Supreme Court's then-pending ruling in *Olson v. Doe* indicated a different

20  interpretation.  *Id.* at 1326, 1327 n. 4.  That ruling subsequently came down in

21  January of this year.  *See Olson v. Doe*, 12 Cal.5th 669 (2022).  And while the

22  litigation privilege question was mooted, California's highest court expressly

23  indicated that the privilege not only applies to contract claims, but that any

24  provision said to have waived the privilege must be carefully construed against the

25  party claiming waiver.  And as discussed below, a plain reading of the Settlement

26  Agreement cannot support a finding of waiver.

27

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

**10**

A.    **The Ninth Circuit's Ruling, Olson v. Doe, and O'Brien & Gere**
     **Eng'rs, Inc. v. City of Salisbury**

Under California Civil Code § 47, "[a] privileged publication or broadcast is
one made…(b) [i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in
any other official proceeding authorized by law, or (4) in the initiation or course of
any other proceeding authorized by law and reviewable…." Cal. Civ. Code § 47(b).
The privilege not only covers statements made in judicial proceedings, but also the
act of filing a lawsuit itself. *Asia Investment Co. v. Borowski*, 133 Cal. App. 3d 832
(1982) (barring arising from filing of CEQA lawsuit). It also immunizes statements
made in "any other official proceeding authorized by law", and bars claims arising
out of statements made before a City Council or City Planning Commission. *See
Cayley v. Nunn*, 190 Cal. App. 3d 300, 303 (1987) ("the privilege of Civil Code
Section 47, subdivision 2 applies to local city council proceedings"; it "also applies
to those before a city planning commission"); *Scott v. McDonnell Douglas Corp.*,
37 Cal. App. 3d 277, 285-86 (1974) (holding that letters distributed during City
Council meetings that included allegedly defamatory statements about the City
Manager were entitled to immunity).

It is not disputed that the Hacienda Parties' alleged conduct is, in the abstract,
within the scope of protected activity under Civil Code 47. Rather, the question
here is whether the litigation privilege can apply as a bar to RREEF's contract
counterclaims, and if so, whether the Hacienda Parties waived the privilege in the
Settlement Agreement. And based on a plain reading of the Settlement Agreement
and consideration of the authorities below, it is clear that the litigation privilege
bars RREEF's counterclaims.

1.    *3500 Sepulveda*

In reversing the trial court's application of the litigation privilege in this case,
the Ninth Circuit started from the premise the privilege only applies to contract in

11

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1   "limited situations where 'its application furthers the policies underlying the

2   privilege.'" *3500 Sepulveda, LLC v. Macy's West Stores, Inc.*, 980 F.3d 1317 (9th

3   Cir. 2020) (quoting *Wentland v. Wass*, 126 Cal. App. 4th 1484, 25 Cal. Rptr. 3d

4   109, 114 (2005)).  Despite acknowledging that "the Settlement agreement did not

5   clearly prohibit Hacienda's prior participation in the municipal and judicial

6   proceedings regarding the construction of the Shopping Center," the court

7   nonetheless held that the competing policies weighed against application of the

8   privilege because "Hacienda willingly limited its communications under the

9   Settlement Agreement." *Id.* at 1327 (citing *Wentland* for the proposition that "[j]ust

10  as one who validly contracts not to speak waives the protection of the anti-SLAPP

11  statute, so too has he waived the protection of the litigation privilege.").  Notably,

12  the court reached this conclusion—that the Hacienda Parties effectively waived the

13  litigation privilege—without engaging in any analysis of the terms of the

14  Settlement Agreement or the intent of the parties.  *See id.*[2]

15

16              2.    *Olson v. Doe*

17          In *Olson*, the California Supreme Court analyzed whether a non-

18  disparagement agreement reached during mediation of a civil harassment action

19  barred a later filed HUD administrative action and civil lawsuit by the alleged

20  victim, Jane Doe, based on the same facts.  After Doe filed the civil action, Olson

21  counterclaimed contending that the HUD action and civil lawsuit violated the

22  parties' non-disparagement agreement.  Doe responded by filing a special motion to

23  strike under California's anti-SLAPP statute contending that these legal actions

24  were "protected activity" under the statute and that Olson could not establish a

25  probability of prevailing on his counterclaims because the non-disparagement

26  _____

27  [2] The court also noted that RREEF's counterclaims were in part based on the
    allegation that the Hacienda Parties released all claims—past and future—in
    Section 12 of the Settlement Agreement, but held that Section 12 is ambiguous as
28  to whether it prohibits the lawsuits in question.  *Id.*

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1    agreement did not preclude her right to sue.  *Olson*, 12 Cal. 5th at 675–677.  The

2    court of appeal held that the litigation privilege barred Olson's counterclaims with

3    respect to the HUD action, but that the public policy underlying the litigation

4    privilege did not support application to the civil complaint and that Olson had

5    established the minimal merit needed to pass the "probability of success" prong of

6    the anti-SLAPP analysis.  *Id.* at 677.

7         On further appeal, the Supreme Court reversed the court of appeal as to its

8    anti-SLAPP decision, holding that the non-disparagement agreement did not bar

9    either Doe's administrative action or her civil complaint, and that therefore Olson

10   could not demonstrate a probability of success on his counterclaims.  In reaching

11   that conclusion, the Court applied traditional rules of contract interpretation and

12   engaged in an exhaustive analysis of the context and terms of the parties' agreement

13   and the non-disparagement provision at issue.  The Court began by noting the non-

14   disparagement was simple—"The parties agree not to disparage one another"—and

15   that if read in isolation was vague enough to support Olson's broad interpretation.

16   *Id.* at 679.  However, as relevant here, the Court considered two important aspects

17   of the mediation agreement it to conclude that it did not bar Doe's actions.

18        First, the Court found that the agreement did not contain any terms providing

19   a release from liability or waiver of claims.  *Id.* at 681.  Noting that Olson's

20   interpretation of the non-disparagement agreement would serve the purpose of

21   those missing terms, the Court cautioned that it must "tread carefully" because such

22   clauses are only enforceable if they "clear, explicit and comprehensible in each [of

23   their] essential details," and "must clearly notify the prospective releasor or

24   indemnitor of the effect of signing the agreement."  *Id.* (quoting *Skrbina v. Fleming*

25   *Companies*, 45 Cal. App. 4th 1353, 1368 (1996)).

26        Second, the Court noted that other provisions of the agreement—including

27   terms relating to the admissibility of evidence presented at the mediation in

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

13

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

subsequent legal proceedings—specifically contemplated the possibility of future litigation. *Id.* at 681. Based on the Court's analysis of the context of the mediation and its terms, the Court concluded that the non-disparagement agreement did not evidence and intent bar Doe's administrative or civil actions, and that Olson therefore could not demonstrate a probability of success on his breach of contract claim sufficient to defeat the anti-SLAPP motion. *Id.* at 684.

Notably, although the Court's ruling on the anti-SLAPP issue mooted the litigation privilege question, the Court nonetheless gave a not-so-subtle preview of its thinking on the issue, citing to a single Maryland Court of Appeals case:

> We also granted review to decide under what circumstances the litigation privilege of Civil Code section 47, subdivision (b) applies to contract claims. Because we conclude that Olson has not demonstrated a probability of success necessary to overcome Doe's anti-SLAPP motion, we need not and do not reach the question whether the litigation privilege also poses a barrier to Olson's claims. [Citation.] **We note only that the approach we have taken here—carefully construing a clause that would effectively waive claims—is similar to the approach of courts that have assessed the application of the privilege in the context of a contract said to have waived it. (*See O'Brien & Gere Engineers v. City of Salisbury*, 447 Md. 394 [135 A.3d 473, 489–491] (2016).)**

*Id.* at 687 (emphasis added).[3]

---

[3] Although dicta, the Court's statement and citation to *O'Brien* are critical because "[i]n the absence of a decision of the highest state court, **a federal court must predict how the highest state court would decide the issue** using intermediate appellate court decisions, **decisions from other jurisdictions**, statutes, treatises,

1      ### 3.    *O'Brien*

2          *O'Brien* involved litigation between the City of Salisbury and the design

3      engineer of a municipal wastewater sewage treatment plant that failed to operate as

4      promised.  The City sued the engineer and the project construction manager for

5      various torts and breach of contract. *O'Brien*, 447 Md. at 399.  The City and the

6      engineer subsequently settled their portion of the dispute and entered a settlement

7      agreement containing a non-disparagement provision.  *Id.* at 399–400.  However,

8      when the City went to trial against the construction manager, its attorney and

9      witnesses made several statements to the effect that the treatment plant's problems

10     were caused by the engineer, prompting the engineer to sue the City for breach of

11     the non-disparagement provision of the settlement agreement.  *Id.* at 400–401.  The

12     City filed a motion to dismiss, which the trial court granted, and Maryland's

13     intermediate court of appeal affirmed.  *Id.* at 402–403.

14         On subsequent appeal, the Maryland Court of Appeals likewise affirmed.

15     First noting that "[m]any other jurisdictions have approved the use of the litigation

16     privilege as a defense to claims sounding in breach of contract," the court found

17     that on balance, policy weighed in favor of applying the privilege in that case.  *Id.*

18     at 412–419.

19         Next, on the question of whether the City waived the litigation privilege in

20     the settlement agreement, the Court—applying a rebuttable presumption against

21     waiver—engaged in a thorough analysis of the settlement agreement and found no

22     waiver.  In so holding , the court first noted that that the term "disparaging" did not

23     expressly address the City's lawsuit, and focused more on statements made to the

24     media and other persons.  *Id.* at 421–422.  The court further noted that despite the

25     engineer's awareness of the City's pending suit against the construction manager,

26     "the Settlement Agreement includes no language restricting the legal issues that the

27     _____

28     and restatements as guidance." *3500 Sepulveda*, 980 F.3d at 1326–1327 (quoting In re Kirkland, 915 F.2d 1236, 1239 (9th Cir. 1990)) (emphasis added).

MOTION FOR LEGAL DETERMINATION THAT THE HACIENDA PARTIES' ALLEGED CONDUCT CANNOT CONSTITUTE A BREACH OF THE SETTLEMENT AGREEMENT

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1  City could raise or the legal strategy that the City could take." *Id.* at 422. The court

2  concluded that "[a]bsent some express language in the Settlement Agreement that

3  prohibited the City from making or encouraging others to make disparaging

4  statements about [the engineer] *in the CDG Lawsuit*, as a matter of law, and

5  utilizing the presumption against waiver, we will not permit such inference." *Id.* at

6  423 (emphasis in original).

7

8    **B.    The Litigation Privilege Bars RREEF's Claims.**

9    In finding that the Hacienda Parties waived the litigation privilege because

10  they "willingly limited [their] communications under the Settlement Agreement,"

11  the Ninth Circuit utterly failed to undergo the careful interpretation of the

12  Settlement Agreement that the California Supreme Court has now made clear must

13  be done to support a finding of waiver. *Olson*, 12 Cal.5th at 687. As shown below,

14  the Settlement Agreement does not evidence the necessary intent required to waive

15  the litigation privilege.

16    RREEF historically has pointed to three provisions of the Settlement

17  Agreement it contends prohibit the Hacienda Parties' alleged conduct and constitute

18  a waiver of the litigation privilege:  their promise not to oppose the project in

19  Section 4(a) (except as purportedly limited by sections 4(g) and (5c); their

20  agreement to cooperate in good faith with the processing of the EIR in section 4(e);

21  and their broad release of claims in section 12.[4]

22    Section 4(a) states in pertinent part:

23        3500 Sepulveda has reviewed and consents to the

24        Shopping Center Project as depicted in the Site Plan

25        attached hereto as Exhibit E; and 3500 Sepulveda will not

26

27  ────────────

28  [4] As discussed above, the Ninth Circuit ruled that the scope of the releases in Section 12 is ambiguous.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

MOTION FOR LEGAL DETERMINATION THAT THE HACIENDA PARTIES' ALLEGED CONDUCT CANNOT CONSTITUTE A BREACH OF THE SETTLEMENT AGREEMENT

1      oppose the City's approval of the Shopping Center

2      Project, except as otherwise provided herein.

3  [Settlement Agreement, § 4(a).]  Sections 4(g) and 5(c) provide, in pertinent part:

4      [4(g)] RREEF and 3500 Sepulveda acknowledge that

5      3500 Sepulveda does not waive the right to participate or

6      comment on material alterations to the Site Plan for the

7      Shopping Center Project which detrimentally affect the

8      use or operations of the Hacienda Building.

9

10     [5(c)]  3500 Sepulveda's failure to approve material

11     revisions to the North Deck and/or Parking Plan shall not

12     prohibit RREEF from submitting such material revisions

13     to the North Deck and the Parking Plan to the City for

14     consideration and approval, nor shall 3500 Sepulveda be

15     precluded from objecting to such material revisions it has

16     not approved.

17         As the Court has already held, when read together, these provisions merely

18  reflect that "Plaintiffs retained the right to object to a project application that

19  deviated materially from the Site Plan." [March Order at pp. 8–9.]  Nothing in the

20  language above restricts the nature or forum in which the Hacienda Parties could

21  "oppose" or "object to" RREEF's material alterations.  Nor do these provisions

22  demonstrate an intent to waive the litigation privilege.  *Olson*, 12 Cal. 5th at 682;

23  *see Gaunt v. Prudential Ins. Co.* 255 Cal.App.2d 18, 23 (1967) ("It is fundamental

24  that the burden of proving estoppel or waiver rests upon the party in whose favor

25  those doctrines are claimed to inure").  To the contrary, the Settlement Agreement

26  clearly contemplated that if RREEF materially deviated from the Site Plan, the

27  Hacienda Parties could oppose the project.

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

17

1  Section 4(e) required the Hacienda Parties to cooperate in good faith with

2  RREEF's EIR, but again, when read in context with Settlement Agreement as a

3  whole, did not preclude the Hacienda Parties from objecting in the event that

4  RREEF materially deviated from the Site Plans.  Nor does it reflect any intent to

5  waive the litigation privilege.

6  Although the Hacienda Parties willingly limited its communications in the

7  Settlement Agreement by agreeing not to oppose the City's project, that agreement

8  was conditioned on RREEF following the Site Plan.  When properly interpreted

9  with the requisite care the California Supreme Court has signaled is necessary, the

10  Settlement Agreement does not reflect any intent by the Hacienda Parties to waive

11  the litigation privilege.

## V.  **CONCLUSION**

13  In light of the interpretation of the Settlement Adopted by the Court in its

14  March Order, and given that it is undisputed RREEF materially deviated from the

15  agreed upon site plans, as a matter of law the Hacienda Parties' alleged conduct

16  cannot constitute a breach of the Settlement Agreement.  Nor do any provisions of

17  the Settlement Agreement support a finding that the Hacienda Parties waived the

18  litigation privilege, which likewise bars RREEF's counterclaims here.

20  DATED:  October 26, 2022                  HILL, FARRER & BURRILL LLP

22                                           By: */s/ Stephen J. Tomasulo*
23                                               Kevin H. Brogan
                                                 Dean E. Dennis
24                                               Stephen J. Tomasulo
                                                 Attorneys for Plaintiffs and Counter-
25                                               Defendants 3500 Sepulveda, LLC
                                                 and 13th & Crest Associates, LLC,
26                                               and Counter-Defendant 6220 Spring
                                                 Associates, LLC

HFB 2322121.1 T4501 002

MOTION FOR LEGAL DETERMINATION THAT THE HACIENDA PARTIES' ALLEGED CONDUCT CANNOT CONSTITUTE A
BREACH OF THE SETTLEMENT AGREEMENT

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147