**HILL, FARRER & BURRILL LLP**
Kevin H. Brogan (Bar No. 089427)
kbrogan@hillfarrer.com
Dean E. Dennis (Bar No. 112616)
ddennis@hillfarrer.com
Stephen J. Tomasulo (Bar No. 181013)
stomasulo@hillfarrer.com
One California Plaza
300 S. Grand Avenue, 37th Floor
Los Angeles, California 90071-3147
Telephone:  213.620.0460
Fax:  213.624.4840

Attorneys for Plaintiffs/Counter-Defendants
3500 SEPULVEDA, LLC and 13th & CREST
ASSOCIATES, LLC, and Counter-Defendant
6220 SPRING ASSOCIATES, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3500 SEPULVEDA, LLC, a Delaware limited liability company, et al.<br><br>Plaintiff,<br><br>v.<br><br>RREEF AMERICA REIT II CORPORATION BBB, a Maryland corporation; MACY'S WEST STORES, INC; and Does 1-25, inclusive,<br><br>Defendants.<br><br>RREEF AMERICA REIT II CORPORATION BBB, a Maryland corporation<br><br>Counter-Claimant,<br><br>3500 SEPULVEDA, LLC, a Delaware limited liability company, et al.<br><br>Counter-Defendants. | Case No. 2:17-cv-08537-AFM<br><br>**REPLY IN SUPPORT OF MOTION FOR LEGAL DETERMINATION THAT THE HACIENDA PARTIES' ALLEGED CONDUCT CANNOT CONSTITUTE A BREACH OF THE SETTLEMENT AGREEMENT**<br><br>Date Action Filed:  October 11, 2017 |

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 4

II.   THERE IS NO LEGITIMATE DISPUTE THAT RREEF DID NOT CONSTRUCT THE PROJECT IN CONFORMITY WITH THE SETTLEMENT AGREEMENT. .......................................................... 6

III.  GIVEN RREEF'S FAILURE TO CONSTRUCT THE PROJECT IN CONFORMITY WITH THE SITE PLAN, THE HACIENDA PARTIES WERE RELIEVED OF ANY OBLIGATION TO REFRAIN FROM CHALLENGING THE PROJECT. .................................. 7

IV.   A BRIDGE TOO FAR:  PLAINTIFFS' AGREEMENT TO "NOT OPPOSE" THE PROJECT CANNOT BE CONSTRUED AS A WAIVER OF THE LITIGATION PRIVILEGE. .......................................... 11

      A.    The Court Should Not Ignore the California Supreme Court's Recent Guidance on the Application of the Litigation Privilege to Contract Claims. ................................................................. 12

      B.    The Plain Language of the Settlement Agreement Cannon Support RREEF's Broad Claim of Waiver. ........................................ 14

V.    CONCLUSION ........................................................................................ 16

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

REPLY IN SUPPORT OF MOTION FOR LEGAL DETERMINATION THAT THE HACIENDA PARTIES' ALLEGED CONDUCT CANNOT CONSTITUTE A BREACH OF THE SETTLEMENT AGREEMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3500 Sepulveda, LLC v. Macy's West Stores, Inc.*,
  980 F.3d 1317 (9th Cir. 2020) ................................................................ 12

*Golden Gate Way, LLC v. Enercon Servs.*,
  572 F. Supp. 3d 797 (N.D. Cal. 2021) .................................................... 15

*Hamilton v. State Farm Fire & Cas. Co.*,
  270 F. 3d 778 (9th Cir. 2001) ................................................................. 11

*Lower Elwha Band of S'Klallams v. Lummi Indian Tribe*,
  235 F.3d 443 (9th Cir. 2000) .................................................................. 14

*Olson v. Doe*,
  12 Cal.5th 669 (2022) ........................................................ 12, 13, 14, 16

**Statutes**

Civil Code section 47 ................................................................................. 15

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

REPLY IN SUPPORT OF MOTION FOR LEGAL DETERMINATION THAT THE HACIENDA PARTIES' ALLEGED CONDUCT CANNOT CONSTITUTE A BREACH OF THE SETTLEMENT AGREEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

## I.   **INTRODUCTION**

The Settlement Agreement includes a comprehensive Site Plan for RREEF's Project that was extensively negotiated. The Site Plan provided additional parking directly adjacent to the Hacienda building. Without this additional parking the Site Plan would not have been approved by the Hacienda Parties.  In response to the previous motion filed by RREEF, this Court ruled that RREEF had discretion to deviate from that Site Plan and that such deviations would not breach the Settlement Agreement.  The question left unanswered by the Court's prior ruling is: What happens to the Hacienda Parties' obligation to refrain from challenging RREEF's Project if RREEF pursues a project that is not in conformity with the site plan?  Hacienda Parties' opening brief argued that any obligation Hacienda had to refrain from challenging the Project—to the City, in court, in the media or anywhere else—was extinguished if and when RREEF decided not to pursue the approved Site Plan.  The logic of this position is fair and unassailable: why would the Hacienda Parties agree not to object to a project the Hacienda Parties had not agreed to?

In response, RREEF asserts two primary arguments: (1) that the Project as built does not materially deviate from the Site Plan; and (2) that the Settlement Agreement constitutes a blanket waiver of all of the Hacienda Parties legal rights—other than to object to the City of Manhattan Beach—*regardless of whether RREEF adhered to the agreed upon Site Plan*.  Neither of these arguments has merit.

In their opening brief, the Hacienda Parties established that the Project as built materially deviated from the Site Plan in the Settlement Agreement, which itself was a more substantial showing than the Hacienda Parties needed to make to be relieved of their obligations under the Settlement Agreement.  Per the language of the Settlement Agreement, the Hacienda Parties obligations are conditioned on RREEF constructing the North Deck in conformity with the Site Plan and Parking

4

1  Plan set forth in Exhibits E and F to the agreement.  Those plans call for the North

2  Deck to be a two-story structure – one subterranean and one above grade—with 509

3  parking spaces.  Instead, RREEF built a three-story structure—all above grade—

4  with only 385 parking spaces.  The Hacienda Parties do not believe there is any

5  legitimate argument that the changes to the North Deck and Lot F parking are not

6  material deviations to the Project as a whole.  But even if there were, there is no

7  possible dispute that the North Deck as built does not conform to the Site Plan.

8  While that failure to conform does not constitute a breach of the Settlement

9  Agreement, it does relieve the Hacienda Parties of any obligation to refrain from

10  challenging the Project.

11       RREEF's argument as to the Hacienda Parties blanket waiver, regardless of

12  RREEF's conduct, fails as well.  Nowhere does the Settlement Agreement say that

13  the Hacienda Parties gave up their legal rights even if RREEF did not adhere to the

14  Site Plan and Parking Plan, and any such waiver would have to be clear and

15  explicit.  These principles equally undermine RREEF's contention that the

16  Hacienda Parties waived the litigation privilege.

17       Moreover, RREEF's contention that the Hacienda Parties waived all rights

18  and remedies other than those in the Settlement Agreement *directly contradicts*

19  RREEF's argument in the briefing on the interpretation of the Settlement

20  Agreement, where RREEF responded to the Hacienda Parties' concerns about

21  RREEF's potential "parade of horribles" by arguing that "assuming *arguendo* that

22  RREEF America engaged in some sort of actionable activity, *Plaintiffs' remedies*

23  *would in no way be limited to the Settlement Agreement*."  [1/20/2022 Opening

24  Brief re: Legal Interpretation of Settlement Agreement (ECF No. 182), p. 18:25–27

25  (emphasis added).]  And perhaps most importantly, the Court adopted RREEF's

26  argument on this point and ruled that the Hacienda Parties retained their legal rights

27  and remedies if RREEF's Project harmed the Hacienda Parties. RREEF can't have

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

5

it both ways, and is judicially estopped from arguing otherwise here.[1]

## II. THERE IS NO LEGITIMATE DISPUTE THAT RREEF DID NOT CONSTRUCT THE PROJECT IN CONFORMITY WITH THE SETTLEMENT AGREEMENT.

As is clear from the language of the Settlement Agreement, parking in what is known as Lot F immediately to the east of the Hacienda Building was a paramount concern of the parties especially Hacienda.  The Settlement Agreement contemplated that a parking structure, the North Deck, would be constructed in Lot F immediately to the east of the Hacienda Building adding parking in this area.  As reflected in Exhibits E and F to the Settlement Agreement, the North Deck would be a two-story structure – one subterranean and one above grade—with a total of 509 parking spaces.  With the adjacent parking, the Site Plan contemplated 620 total parking spaces in and adjacent to Lot F.  [October 26, 2022 Neumann Declaration, ¶ 6, Settlement Agreement ("SA"), Exhs. E, F].  The Settlement Agreement provides that if RREEF pursues the Project as reflected on the Site Plan, *it was required to build the North Deck in conformity with the Site Plan and Parking Plan*:

> The Site Plan for the Shopping Center Project includes a proposed parking structure to be located directly to the east of the Hacienda Building (the "North Deck")  . . . If RREEF pursues the Shopping Center Project as shown on the Site Plan, receives approval from the City for the Shopping Center Project including the North Deck, and/or proceeds to construct the North Deck, the Parties agree to the following:
>
> a. The North Deck may be constructed in two

---

[1] The Hacienda Parties do not agree with many of the "factual assertions" contained in RREEF's Opposition.  If this matter proceeds to trial, the Hacienda Parties intend to challenge many of those assertions.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1 stages – Stage One and Stage Two – as depicted on
2 the Site Plan and in substantial conformity with that
3 certain parking plan attached hereto as Exhibit F
4 (the "Parking Plan").

5 [SA, ¶¶ 5, 5(a).]

6 RREEF clearly did not comply with its obligation to construct the North
7 Deck in conformity with the Site Plan.  The change from a two-level structure—one
8 subterranean and one at grade—with 509 parking spaces to a three-level parking
9 structure with 385 parking spaces is not in conformity with the Site Plan.  [See
10 January 27, 2022 Joint Stipulation of Facts, Doc. No. 183, ¶¶ 14-15.]  And while
11 this failure to conform does not constitute a *breach* of the Settlement Agreement, as
12 discussed below, it did relieve the Hacienda Parties of all of their obligations to
13 refrain from challenging the Project—to the City, in court, in the media or
14 anywhere else.

15 RREEF seems to argue that the Hacienda Parties need expert testimony to
16 determine whether the North Deck as built is in conformity with the Site Plan, but
17 this contention is absurd.  Mark Neumann negotiated the Settlement Agreement on
18 behalf of the Hacienda Parties and knows exactly what the Hacienda Parties agreed
19 to and why.  He is uniquely qualified to render the fairly obvious conclusion that
20 adding two above-grade levels to, and subtracting 124 parking spaces from, a
21 structure does not qualify as conformity; it is a material deviation.

23 **III.  GIVEN RREEF'S FAILURE TO CONSTRUCT THE PROJECT IN
24 CONFORMITY WITH THE SITE PLAN, THE HACIENDA PARTIES
25 WERE RELIEVED OF ANY OBLIGATION TO REFRAIN FROM
CHALLENGING THE PROJECT.**

26 Section 4(a) of the Settlement Agreement provides, in part:

27 3500 Sepulveda has reviewed and consents to the
28 Shopping Center Project as depicted in the Site Plan as

7

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1    attached hereto as Exhibit E; and 3500 Sepulveda will not

2    oppose the City's approval of the Shopping Center

3    Project, except as otherwise provided herein.

4    RREEF argues that with this provision, the Hacienda Parties waived all of

5    their legal rights to challenge the Project "except as otherwise" provided in the

6    Settlement Agreement, and that the only provisions that "provide otherwise" are

7    4(g) and 5(c).  Section 4(g) of the Settlement Agreement provides that:

8    3500 Sepulveda does not waive the right to participate or

9    comment on material alterations to the Site Plan for the

10    Shopping Center Project which detrimentally affect the

11    use or operations of the Hacienda Building."

12    Section 5(c) provides:

13    RREEF may revise those portions of the Site Plan relating

14    to the Parking Decks and the Parking Plan from time to

15    time in its sole and absolute discretion or as required by

16    the City, provided that RREEF shall submit any material

17    revisions to those portions of the Site Plan relating to the

18    North Deck and the Parking Plan to 3500 Sepulveda for

19    its review and approval ten (10) business days prior to

20    submitting such revisions to the City.  Notwithstanding

21    the foregoing, 3500 Sepulveda's failure to approve

22    material revisions to the North Deck and/or Parking Plan

23    shall not prohibit RREEF from submitting such material

24    revisions to the North Deck and the Parking Plan to the

25    City for consideration and approval, nor shall 3500

26    Sepulveda be precluded from objecting to such material

27    revisions it has not approved.

28

8

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

[SA, ¶ 5(c).]

RREEF argues that, cumulatively, these provisions constitute a waiver of all of the Hacienda Parties' rights—other than to comment to the City—regardless of whether RREEF deviated from its obligation to build the North Deck in conformity with the Site Plan. These provisions simply do not stand for that proposition. While these provisions delineate certain circumstances in which it would be appropriate to object to the Project, the provisions say nothing about the Hacienda Parties waiving the right to litigate or otherwise assert property rights if their rights are violated. As discussed below, any such waiver would have to be clear and specific to be enforceable.

Moreover, RREEF's argument here is irreconcilable with RREEF's argument in the first round of briefing on the interpretation of the Settlement Agreement. In the previous round of briefing, the Hacienda Parties raised the concern that if the Settlement Agreement did not restrict RREEF in any way from materially deviating from the Site Plan, that opened the door for RREEF to do something highly injurious to the Hacienda Parties. RREEF responded to this concern by making it clear that the Hacienda Parties retained all of their rights and remedies if that were to happen:

> Moreover, a correct interpretation of the Settlement Agreement (i.e., recognizing that the Settlement Agreement does not place any limits on RREEF America's ability to make changes to the 2008 Project Plans) would not leave Plaintiffs without recourse if RREEF America were to construct a project that Plaintiffs found to be injurious to their rights. **Indeed, in this case, Plaintiffs are pursuing claims for violation of their easement rights under a separate contract between the**

9

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1  **parties, the "COREA."**  While Plaintiffs' claims are
2  meritless because the Project does not interfere with or in
3  any way violate Plaintiffs' easement rights, *assuming*
4  *arguendo that RREEF America engaged in some sort of*
5  *actionable activity, Plaintiffs' remedies would in no way*
6  *be limited to the Settlement Agreement*."
7  [1/20/22 Opening Brief re: Legal Interpretation of Settlement Agreement (ECF No.
8  182), at p. 18:17–27.]
9       The Court adopted RREEF's position on this issue:
10  Given this language and structure, the Agreement must be
11  interpreted to allow that RREEF might not pursue the
12  proposed project and might pursue a completely different
13  project – in which case the Agreement would not prevent
14  objection by Plaintiffs. Indeed, the Agreement provides
15  that RREEF could make material changes to the Site Plan
16  and Parking Plan, with the only proviso that if RREEF did
17  make such changes, then Plaintiffs were entitled to notice
18  and to object before the City.  (Agreement Section 5c.)
19  *The rights to notice and to object preserve Plaintiffs'*
20  *ability to assert their property rights under the law and*
21  *pursuant to any other legal agreement (such as the*
22  *COREA).*
23  [March 1, 2022 Order on Interpretation of the Settlement Agreement at
24  p. 9 (emphasis added).]
25       It is impossible to reconcile RREEF's previous position, as adopted by the
26  Court, that the Hacienda Parties could pursue any and all legal remedies if the
27  Hacienda Parties were injured by RREEF's deviation from the Site Plan—such as a
28

10

1  lawsuit under the COREA— with RREEF's current position that its remedies are

2  strictly limited to commenting on material changes to the City.  RREEF is judicially

3  estopped from making its current argument on this point.  In *Hamilton v. State*

4  *Farm Fire & Cas. Co.*, 270 F. 3d 778 (9th Cir. 2001), the court explained:

5      Judicial estoppel is an equitable doctrine that precludes a

6      party from gaining an advantage by asserting one

7      position, and then later seeking an advantage by taking a

8      clearly inconsistent position. [Citation]. This court

9      invokes judicial estoppel not only to prevent a party from

10     gaining an advantage by taking inconsistent positions, but

11     also because of "general considerations of the orderly

12     administration of justice and regard for the dignity of

13     judicial proceedings," and to "protect against a litigant

14     playing fast and loose with the courts."

15  *Id.*  at 782–83.

16      Here, RREEF is taking a position completely at odds with its previous

17  position and should be estopped from doing so.  Moreover, the logic and

18  reasonableness of RREEF's previous position is clear: why would the Hacienda

19  Parties give up any rights or remedies with regard to a project the Hacienda Parties

20  did not approve?  The answer is that the Hacienda Parties would not and did not,

21  and RREEF cannot maintain its claims under the Settlement Agreement.

22

23  **IV.**    **A BRIDGE TOO FAR:  PLAINTIFFS' AGREEMENT TO "NOT**

24  **OPPOSE" THE PROJECT CANNOT BE CONSTRUED AS A**
    **WAIVER OF THE LITIGATION PRIVILEGE.**

25      It is striking to see RREEF, who only months ago argued successfully that

26  nothing in the Settlement Agreement would limit the Hacienda Parties' rights to go

27  to court to redress any harm caused by RREEF's Project, now contend the opposite:

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

MOTION FOR LEGAL DETERMINATION THAT THE HACIENDA PARTIES' ALLEGED CONDUCT CANNOT CONSTITUTE A
BREACH OF THE SETTLEMENT AGREEMENT

that by agreeing that Hacienda "will not oppose" City approval of the Project, the Hacienda Parties not only abandoned their right to seek legal remedies for harm suffered, but waived the litigation privilege as well. Its Opposition fails to explain away this fundamental contradiction, how the Settlement Agreement can on the one hand permit the Hacienda Parties to assert their rights under the law if RREEF's material changes to the Site Plan harmed them, and yet on the other hand constitute a wholesale waiver of the very privilege attendant to the exercise of that right.

Because it can't explain away its contradictory positions, RREEF retreats to more comfortable ground, arguing that the Ninth Circuit's holding on the litigation privilege is "law of the case" and pressing this Court to ignore the California Supreme Court's recent and clear signal in *Olson v. Doe* that courts must *carefully construe* any purported contractual waiver of the litigation privilege—an exercise the Ninth Circuit plainly did not engage in. But as the Hacienda Parties explained in their Motion and further discussed below, the Ninth Circuit expressly acknowledged its decision was only binding in the absence of any indication by the California Supreme Court that it would hold otherwise—an indication the high court unequivocally gave in *Olson*. And applying even the most modest scrutiny, the Hacienda Parties' agreement to "not oppose" the Project cannot be interpreted as a waiver of the litigation privilege.

## A. <u>The Court Should Not Ignore the California Supreme Court's Recent Guidance on the Application of the Litigation Privilege to Contract Claims</u>.

RREEF asks the Court to forego any inquiry into whether Plaintiffs' agreement to "not oppose" the Project can be construed as a broad waiver of the litigation privilege, arguing instead that the Ninth Circuit's decision in *3500 Sepulveda, LLC v. Macy's West Stores, Inc.*, 980 F.3d 1317, 1327 (9th Cir. 2020) is "law of the case." RREEF argues that the Court should ignore the California Supreme Court's *Olson* decision, because it does not constitute the kind of

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1    "intervening controlling authority" sufficient to revisit the issue. [Opp. at 25:12–

2    25.]  But in so arguing, RREEF improperly conflates the standard typically applied

3    when a party seeks reconsideration of a settled matter after a change in controlling

4    authority with what has happened here, where the decision claimed to be "law of

5    the case" itself expressly states that it is only binding in the absence of any

6    subsequent indication by the California Supreme Court that the latter would hold

7    otherwise.  *Id.* at 1327, fn. 4.

8          Indeed, it is important to recall the Ninth Circuit's mandate when it surveyed

9    California law on the application of litigation privilege to contract claims.  Given

10   the dearth of guidance from the California Supreme Court at the time, the Ninth

11   Circuit's task in *3500 Sepulveda* was to review the conflicting California court of

12   appeal decisions and to try to "predict how the highest state court would decide the

13   issue." *Id.* at 1327.  And in deciding that the litigation privilege did not apply, the

14   court was largely focused on the various public policy considerations that drove the

15   lower court decisions, finding that "California courts that have applied the litigation

16   privilege to contract claims did so in the face of weightier policy concerns than we

17   face here." *Id.* at 1327.

18         But now we have guidance from the California Supreme Court on how it

19   views the matter—guidance RREEF wants this Court to ignore.  By noting that its

20   thorough analysis of the contract at issue in *Olson* was similar to the approach that

21   other courts have taken in construing a contract provision said to have waived the

22   litigation privilege—and citing a single Maryland Court of Appeals case in

23   support—California's highest court sent a clear message on where it stands on the

24   matter:  consistent with general principles of contract interpretation and waiver,

25   courts must "carefully construe" any contract claimed to have waived the litigation

26   privilege.  *Olson v. Doe*, 12 Cal.5th 669, 687 (2022).

27         To dismiss the court's statements in *Olson* and its purported "drive-by

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

13

1  citation" to the Maryland case *O'Brien* is to believe that the California Supreme

2  Court would carelessly include casual musings in its opinions.  Plaintiffs

3  respectfully suggest otherwise.  Refusing to consider *Olson* because it is not

4  "intervening controlling authority" would be an abdication of the Court's primary

5  obligation here, which is to predict how the California Supreme Court would decide

6  the issue.  And in that regard, the *Olson* decision cannot be ignored.[2]

## B.  The Plain Language of the Settlement Agreement Cannon Support RREEF's Broad Claim of Waiver.

Turning to the language of the Settlement Agreement itself, RREEF all but avoids any substantive discussion of whether Plaintiffs' agreement to "not oppose" the Project can be construed as a waiver of the litigation privilege.  RREEF recites the Ninth Circuit's finding that the Hacienda Parties "willingly limited its communications under the Settlement Agreement" (a conclusion the Ninth Circuit reached without any discussion of the specific contract language itself), but relegates the actual analysis of Plaintiffs' purported waiver to a single footnote, contending that the Hacienda Parties' agreement to "not oppose" the Project "preclude[es] opposition *in all forums* except as detailed in the Settlement Agreement," and that "§§ 4(g) and 5(c) explicitly restrict the 'nature' of the Hacienda Parties' permitted opposition by limiting it to comments and opposition before the City regarding certain material changes …."  [Opp. at 27, fn. 12 (emphasis added).]

Setting aside the fact that RREEF's argument blatantly contradicts its prior position that Plaintiffs' remedies for any harm caused by RREEF's Project "would in no way be limited to the Settlement Agreement" [*see supra*, § III], the agreement

---

[2] Even if the doctrine of law of the case applies, it is a discretionary doctrine subject to numerous exceptions including, as relevant here, "other changed circumstances" occurring after the decision came down. *See Lower Elwha Band of S'Klallams v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (listing exceptions to the doctrine).

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

MOTION FOR LEGAL DETERMINATION THAT THE HACIENDA PARTIES' ALLEGED CONDUCT CANNOT CONSTITUTE A BREACH OF THE SETTLEMENT AGREEMENT

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1    to "not oppose" the Project except as specified in the Settlement Agreement simply
2    cannot be construed as a waiver of the litigation privilege.

3         "[T]he doctrine of waiver refers to the intentional relinquishment of a known
4    right after full knowledge of the facts and depends upon the intention of one party
5    only." *Golden Gate Way, LLC v. Enercon Servs.*, 572 F. Supp. 3d 797, 830 (N.D.
6    Cal. 2021) (quoting *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout
7    III, Ltd.*, 30 Cal. App. 4th 54, 59 (1994)).  "This is a difficult standard to meet
8    because '[w]aiver always rests upon intent,' and the burden 'is on the party
9    claiming a waiver of right to prove it by clear and convincing evidence that does
10   not leave the matter to speculation.'"  *Id.* (quoting *DRG/Beverly Hills*, 30 Cal. App.
11   4th at 59).

12        RREEF cannot meet its burden in showing that § 4(a) of the Settlement
13   Agreement reflects the Hacienda Parties' intent to waive the litigation privilege,
14   particularly when considered in the context of the Settlement Agreement as a
15   whole.  Indeed, in interpreting other provisions of the Settlement Agreement, this
16   Court already ruled that Plaintiffs' "rights to notice and to *object preserve
17   Plaintiffs' ability to assert their property rights under the law* and pursuant to any
18   other legal agreement (such as the COREA)."  [Order re Legal Interpretation of
19   Settlement Agreement, ECF No. 193 at p. 9 (emphasis added).]  RREEF cannot
20   have it both ways:  the Settlement Agreement cannot be interpreted both to permit
21   the Hacienda Parties to assert their rights under the law and also to constitute a
22   wholesale waiver of the litigation privilege.[3]

23   [3] RREEF also contends that there are questions of fact regarding whether the
24   Hacienda Parties' alleged conduct would fall under the protection of Civil Code
     section 47.  [Opp. at pp. 28–30.]  Plaintiffs note that the district previously found
25   that all of Plaintiffs' alleged conduct was protected by litigation privilege, and that
     the Ninth Circuit's reversal of the district court's order granting summary judgment
26   was based solely on the *legal* question of the litigation privilege's application to
27   contract claims.  *3500 Sepulveda, LLC*, 980 F.3d at 1326–1327.  In any event, if the
     Court finds that the litigation privilege applies in this case, as Plaintiffs believe it
28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1    Nor is RREEF's effort to distinguish the facts in *Olson* and *O'Brien*

2 compelling.  Those cases are not important because the cases are factually

3 analogous.  The cases are important because of the fundamental principle of

4 contract interpretation they apply:  courts must carefully construe any contract

5 provision claimed to constitute a waiver of the litigation privilege.  And applying

6 that scrutiny here, RREEF's claim of waiver falls far short.

7 **V.    <u>CONCLUSION</u>**

8    In light of the interpretation of the Settlement Adopted by the Court in its

9 March Order, and given that it is undisputed RREEF materially deviated from the

10 agreed upon site plans, as a matter of law the Hacienda Parties' alleged conduct

11 cannot constitute a breach of the Settlement Agreement.  Nor do any provisions of

12 the Settlement Agreement support a finding that the Hacienda Parties waived the

13 litigation privilege, which likewise bars RREEF's counterclaims here.

14    For the reasons explained above, RREEF cannot prevail on its claims under

15 the Settlement Agreement.

16

17

18 DATED:  November 23, 2022            HILL, FARRER & BURRILL LLP

19

20                          By: */s/ Stephen J. Tomasulo*
                               Kevin H. Brogan
21                             Dean E. Dennis
                               Stephen J. Tomasulo
22                             Attorneys for Plaintiffs and Counter-
                               Defendants 3500 Sepulveda, LLC
23                             and 13th & Crest Associates, LLC,
                               and Counter-Defendant 6220 Spring
24                             Associates, LLC

25 HFB 2322121.1 T4501 002

26

27 _____

28 should, RREEF's contention that certain alleged conduct falls outside of privilege
   can be addressed through subsequent briefing or further limited proceedings.

MOTION FOR LEGAL DETERMINATION THAT THE HACIENDA PARTIES' ALLEGED CONDUCT CANNOT CONSTITUTE A
BREACH OF THE SETTLEMENT AGREEMENT