**HILL, FARRER & BURRILL LLP**
Kevin H. Brogan (Bar No. 089427)
kbrogan@hillfarrer.com
Stephen J. Tomasulo (Bar No. 181013)
stomasulo@hillfarrer.com
Jeffrey B. Bell (Bar No. 269648)
jbell@hillfarrer.com
One California Plaza
300 S. Grand Avenue, 37th Floor
Los Angeles, California 90071-3147
Telephone:  213.620.0460
Fax:  213.624.4840

Attorneys for Plaintiffs/Counter-Defendants
3500 SEPULVEDA, LLC and 13th & CREST ASSOCIATES, LLC, and Counter-Defendant
6220 SPRING ASSOCIATES, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3500 SEPULVEDA, LLC, a Delaware limited liability company; and 13th & CREST ASSOCIATES, LLC, a California limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> RREEF AMERICA REIT II CORPORATION BBB, a Maryland corporation; MACY'S WEST STORES, INC; and Does 1-25, inclusive, <br><br> Defendants. <br><br> RREEF AMERICA REIT II CORPORATION BBB, a Maryland corporation <br><br> Counter-Claimant, <br><br> 3500 SEPULVEDA, LLC, a Delaware limited liability company;13th & CREST ASSOCIATES, LLC, a California limited liability company; and 6220 SPRING ASSOCIATES, LLC, a California limited liability company, <br><br> Counter-Defendants. | Case No. 2:17-cv-08537-AFM <br><br> **PLAINTIFFS AND COUNTER-DEFENDANTS' POST-TRIAL BRIEF** <br><br><br> The Hon. Alexander MacKinnon <br><br> Date Action Filed:  October 11, 2017 |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................... 3

II.  THE HACIENDA PARTIES DID NOT BREACH THE SETTLEMENT AGREEMENT. ..................................................................... 4

III. THERE IS NO EVIDENCE THAT ANYTHING THE HACIENDA PARTIES DID DELAYED CONSTRUCTION. ............................................ 5

    A.  There is No Evidence that the Hacienda Parties' Appearances in Front of the Planning Commission and City Council Delayed Entitlement of the Project. ..................................................................... 5

    B.  There is No Evidence that the Hacienda Parties Played Any Role in the CEQA Lawsuit or that the CEQA Lawsuit Actually Delayed Construction. ........................................................................... 8

    C.  The Evidence Establishes that the Hacienda Parties' Writ Petition Did Not Delay Construction. .................................................... 10

IV.  RREEF FAILED TO PRODUCE COMPETENT EVIDENCE THAT IT SUSTAINED DAMAGES. .................................................................... 10

V.   CONCLUSION ............................................................................................ 11

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

## I. INTRODUCTION

Counter-Claimant RREEF America REIT II Corporation BBB's ("RREEF") alleges that Counter-Defendants 3500 Sepulveda LLC and 13th & Crest Associates, LLC, and Counter-defendant 6220 Spring Associates, LLC, (collectively, the "Hacienda Parties"), breached the October 8, 2008 settlement agreement between the parties ("Settlement Agreement") by (1) appearing and speaking about RREEF's Manhattan Village Shopping Center Project ("Project") at hearings before the Manhattan Beach Planning Commission and City Council; (2) playing some unspecified role in a third party CEQA lawsuit that challenged the Project; and (3) filing a writ petition challenging the approval of the Project.  RREEF alleges that these breaches delayed the commencement of construction of the Project, resulting in substantial damages to RREEF.  The evidence, however, failed to substantiate these claims.

None of the Hacienda Parties' conduct constitutes a breach of the Settlement Agreement, as their obligations were excused when RREEF repeatedly and materially deviated from the site plans agreed in the Settlement Agreement—including when it previewed that it would not comply with the construction parking requirement agreed to in the Settlement Agreement.

Moreover, there is no evidence that RREEF's project was delayed by any of the Hacienda Parties' alleged breaches. RREEF failed to substantiate its claim that it would have obtained entitlements by December of 2013, or that anything the Hacienda Parties did caused the entitlement process to go longer than it would have. The evidence also showed that, once RREEF was entitled, construction was delayed not because of a pending California Environmental Quality Ace ("CEQA") lawsuit or anything the Hacienda Parties did, but because the City Council conditioned RREEF's ability to pull construction permits on RREEF obtaining Macy's written commitment to consolidate and expand its store—a condition RREEF didn't meet until July of 2016.  And contrary to RREEF's claim that the

CEQA suit was a "cloud on title" preventing it from pushing the project forward, the evidence shows that as soon as Macy's approved the revised site plan, RREEF commenced the preconstruction process of finalizing construction drawings and obtaining construction contract bids all while the CEQA Litigation was pending.

RREEF also contends that the "Director Writ Litigation" filed in 2017 delayed the project, but introduced no evidence that that lawsuit had any impact on the commencement of construction at all, let alone delayed it.  Indeed, RREEF applied for building permits over a month *before* the Director Writ Litigation was filed, and the uncontroverted evidence shows that the City Planning Department actively engaged in the permitting process throughout 2017.  And far from its allegations now, leading up to construction RREEF blamed *the City* for its delays, not the Hacienda Parties.  RREEF's claimed delay damages do not withstand scrutiny.

## II. THE HACIENDA PARTIES DID NOT BREACH THE SETTLEMENT AGREEMENT.

In their October 26, 2022 Motion for a Legal Determination that the Hacienda Parties' Alleged Conduct Cannot Constitute a Breach of the Settlement Agreement [ECF No. 225], and the November 23, 2022 Reply in support of that motion [ECF No. 228], the Hacienda Parties set forth their position that, in light of this Court's March 1, 2022 Order [ECF No. 197] ("March Order"), the Hacienda Parties' alleged conduct, even if proven, does not breach the Settlement Agreement. All the alleged conduct was permitted under the Settlement Agreement because RREEF materially deviated from the site plan for the Project agreed to in the Settlement Agreement and acknowledged that it would not comply with the construction parking requirement agreed to in the Settlement Agreement.

Starting in 2010, and throughout the entitlement process, RREEF repeatedly revised the site plan from the plan agreed to in the Settlement Agreement.  The changes reduced parking in the Lot F area, reduced parking during construction,

and changed the layout and configuration of parking in the core area and the North Deck. The final constructed plan has 471 spaces in Lot F, six fewer than before construction. This is 161 spaces below the number of spaces in the Settlement Agreement Site Plan, thus constituting a material deviation from the Settlement Agreement Site Plan that detrimentally affected the Hacienda Parties, permitting objection under the Settlement Agreement. Moreover, RREEF made it clear early on that it would not provide 240 parking spots in Lot F during construction. Accordingly, the Hacienda Parties were excused from their obligations under the Settlement Agreement and entitled to object to the Project before the City and in court.

The referenced briefs also explain that, in light of the California Supreme Court's recent decision in *Olson v. Doe*, 12 Cal.5th 669 (2022), the Hacienda Parties have not waived the privilege afforded by Civil Code Section 47 which is also a complete defense to RREEF's claims. Any such waiver would have to be clear and explicit, and there is no such waiver in the Settlement Agreement.

### III. THERE IS NO EVIDENCE THAT ANYTHING THE HACIENDA PARTIES DID DELAYED CONSTRUCTION.

Even if the Hacienda Parties' conduct could be considered breaches of the Settlement Agreement, there is no evidence that any of the alleged breaches caused any delay of the Project construction.

### A. There is No Evidence that the Hacienda Parties' Appearances in Front of the Planning Commission and City Council Delayed Entitlement of the Project.

Fundamental to RREEF's claims is its contention that that absent the Hacienda Parties' breaches, RREEF would have received the necessary entitlements for the Project in December of 2013. RREEF produced no reliable evidence to substantiate this estimate. Rather, RREEF based this estimate solely on its experience with another project in Marina del Rey, a development of unknown scope, size, cost, nature, complications, or environmental status in an entirely

different municipality. RREEF's estimate that it would have been entitled in December of 2013 is speculative, uncertain, lacks foundation, and was not supported by competent evidence. Accordingly, RREEF failed to prove the fact of damage—i.e., that the project was in fact delayed during the entitlement period—with reasonable certainty.

Moreover, even if RREEF proved delay in the entitlement phase—which it did not—RREEF failed to establish that any such delay was caused by the Hacienda Parties. RREEF alleges that the Hacienda Parties delayed the entitlement process beyond the fictional December 2013 target date by opposing the Project at hearings before the City of Manhattan Beach Planning Commission and City Council between June of 2012 and December of 2014. While the Hacienda Parties made presentations at some of the 17 hearings before the Planning Commission and City Council, RREEF failed to introduce any evidence that either the Planning Commission or City Council delayed anything because of the Hacienda Parties. It is clear from the transcripts of the hearings and the staff reports for the hearings that the Planning Commission and City Council needed to resolve a broad range of issues before they could approve the Project, including the Macy's issue, phasing of the project, traffic, parking, crime, where the new parking structures should be located and what size they should be, how large the post-Project mall would be and how much open space it would include. These issues were repeatedly raised at the hearings by City staff, City experts and many members of the public. The Hacienda Parties were just a small part of this process.

It is also clear from the transcripts of the hearings and staff reports for the hearings that the Planning Commission and City Council were far more concerned with getting approval for the Project from Macy's. Macy's owns part of the Shopping Center and is the anchor tenant of the Shopping Center. As such, Macy's had the ability to unilaterally derail the Project in its entirety. The lack of commitment from Macy's—and inability to proceed without that commitment—

was a constant theme discussed at the Planning Commission and City Council hearings. At the May 20, 2014 City Council hearing, City expert Larry Kosmont succinctly summarized the issue by explaining that the lack of commitment from Macy's has "always been the giant in the room when it comes to this revitalization." [TE 2141 at 200.]

Simply put, there is a failure of proof that any comments made or materials submitted by the Hacienda Parties to the Planning Commission and/or City Council caused the Planning Commission or City Council to set a hearing they otherwise would not have, or that the time between hearings was delayed because of anything the Hacienda Parties said or did. RREEF representative Mark English explained that RREEF modified the Project in response to concerns raised by many entities and people:

> We've undertaken a number of modifications to that project as a result of comments from 3500 Sepulveda, Macy's, the Planning Commission, the City Council and members of the public both in private conversations, as well as in public testimony.

[TE 2141, 31:22–32:2.]

There is no contemporary evidence that RREEF blamed the Hacienda Parties for delaying the Project or that anyone from RREEF ever told the Hacienda Parties that they were breaching the Settlement Agreement by challenging the Project.

Moreover, RREEF did not call a single witness from the Planning Commission or City Council to support its claim that conduct by the Hacienda Parties delayed the entitlement process. "Generally, counsel in a civil trial may comment on the failure of a party to call an available witness whose testimony the party would naturally be expected to produce if favorable to him." *Auto Owners Ins. Co. v. Bass*, 684 F2d 764, 769 (11th Cir. 1982); *see United States v. Noah*, 475 F.2d 688, 691 (9th Cir. 1973) ("The failure of a party to produce a material witness

HFB 2625454.1 T4501 002

who could elucidate matters under investigation gives rise to a presumption that the testimony of that witness would be unfavorable to that party if the witness is peculiarly within the party's control.") While City employees may not have been particularly within RREEF's control, given that RREEF bears the burden of proof in establishing that the Hacienda Parties' conduct delayed the public meetings, RREEF's failure to call representative witnesses constitutes a failure of proof.

### B. There is No Evidence that the Hacienda Parties Played Any Role in the CEQA Lawsuit or that the CEQA Lawsuit Actually Delayed Construction.

RREEF contends that a CEQA lawsuit filed by an entity known as Sensible Citizens of Manhattan Beach ("Sensible Citizens") was akin to a "cloud on title" for the project, and that RREEF's Investment Committee wouldn't commit necessary funds to push the project forward due to the uncertainty. The evidence tells a different story.

As a primary matter, there is no evidence that Mark Neumann or anyone else affiliated with the Hacienda Parties played any role in Sensible Citizens' decision to pursue the CEQA lawsuit or in financing that lawsuit. The Hacienda Parties did communicate with members of Sensible Citizens but only did so in their capacity as neighboring property owners who could be impacted by a potential settlement between Sensible Citizens and RREEF. There is no evidence of any further involvement by the Hacienda Parties. To the extent they are based on the CEQA Litigation, RREEF's claims for breach of contract and breach of the implied covenant of good faith and fair dealing fail as a matter of law.

Moreover, even if RREEF had established that the Hacienda Parties were in any way responsible for the filing or prosecution of the CEQA Litigation, RREEF did not prove with reasonable certainty that construction was delayed because of the CEQA Litigation.

To resolve their concerns about Macy's, the City Council imposed a

1  condition requiring that RREEF submit a binding, written commitment from
2  Macy's to consolidate and expand its store before the City would issue building
3  permits.  Macy's did not provide that commitment until July 8, 2016.  There is no
4  evidence that Macy's would have committed earlier but for the CEQA Litigation or
5  conduct by the Hacienda Parties.  Indeed, even though Macy's is a co-defendant
6  represented by the same counsel in this action, RREEF did not call any witness
7  from Macy's at trial, which gives rise to a presumption that Macy's testimony on
8  this issue would have been unfavorable to RREEF.  *Noah*, 475 F.2d at 691.
9  Accordingly, RREEF failed to establish with reasonable certainty that the project
10 was delayed prior to July 8, 2016, or that the Hacienda Parties were a substantial
11 factor in any such delay.

12       RREEF also failed to establish that the CEQA Litigation delayed the project
13 between July 8, 2016 and December 2016, when the CEQA Litigation terminated.
14 By RREEF's own admission, it could not begin the year-long "preconstruction"
15 process of developing the site plan into construction drawings sufficient to go out to
16 bid to contractors until it had an agreed upon site plan with Macy's.  The site plan
17 Macy's agreed to in the Macy's Separate Agreement is dated April 15, 2016.  On
18 April 18, 2016, three days after the Macy's site plan was finalized, RREEF's
19 Investment Committee approved $5.5 million to pay for the development of
20 construction drawings—i.e., the very thing that RREEF claims it would not do
21 while the CEQA Litigation was pending.  And with that funding, RREEF spent the
22 rest of 2016 developing construction level plans sufficient to go out to bid and
23 sufficient to file for a building permit by December of 2016.  Nearly all of this work
24 was done while the CEQA Litigation was pending.  Accordingly, RREEF has failed
25 to prove with reasonable certainty that the CEQA Litigation delayed construction,
26 or that any conduct by the Hacienda Parties was a substantial factor in any such
27 delay.
28

HFB 2625454.1 T4501 002

### C. The Evidence Establishes that the Hacienda Parties' Writ Petition Did Not Delay Construction.

3500 Sepulveda filed the Director Writ Litigation to address the additional loss of parking resulting from RREEF's revised site plan that the Planning Director "endorsed" without public hearing in late 2016. RREEF failed to prove that the Director Writ Litigation bore any relation to the commencement of construction, let alone delayed it.

RREEF representative Phil Friedl testified that RREEF could not submit full construction drawings to the City until the updated site plan was approved by the City in September of 2017 (thus mooting the Director Writ Litigation). However, RREEF submitted its Northeast Deck plans to the City for plan check and permitting on December 27, 2016, two months *before* the Director Writ Litigation was filed. And the uncontroverted evidence shows that the City Planning Department actively engaged in the permitting process and providing comments on RREEF's building permit application throughout 2017, all while the Director Writ Litigation was pending. Indeed, the contemporaneous evidence shows that, far from blaming the Director Writ Litigation, RREEF believed the City's Planning Department was causing costly delays. There is no evidence that the pendency of the Director Writ Litigation delayed the construction of the project or in any way impacted or interfered with the City's processing of RREEF's building permit application for the Northeast Deck.

## IV. <u>RREEF FAILED TO PRODUCE COMPETENT EVIDENCE THAT IT SUSTAINED DAMAGES.</u>

RREEF put on its damages testimony through its expert David Bones. Mr. Bones assumed that the project was delayed, and that all delays were the result of the Hacienda Parties, ignoring all other sources of delay. Mr. Bones testified that the delays caused by the Hacienda Parties resulted in two categories of damages to RREEF: (1) increased construction costs for the Project; and (2) lost profits. There

HFB 2625454.1 T4501 002

are substantial flaws with both categories of damages.

Mr. Bones's opinion was that the construction costs for the Project increased in accordance with a national building cost index known as the Turner Index. However, he knows next to nothing about this index. He does not know what cities in encompasses, the size of the construction projects upon which it is based or even who prepares it. His testimony based upon this index is unreliable and speculative. Mr. Bones also failed to speak with any of the engineers, architects or contractors that actually worked on the Project or to consider the impact of the Guaranteed Maximum Price Contracts for the Project.

Mr. Bones's testimony on RREEF's lost profits was similarly flawed. Among other issues, all of the lost profits he calculated were based upon financial projections in an appraisal prepared by an entity known as Duff & Phelps. That appraisal was not entered into evidence and Mr. Bones never spoke to anyone from Duff & Phelps about the appraisal. There is no evidentiary basis upon which to conclude that those projections were accurate or reliable.

## V. CONCLUSION

RREEF has failed to prove that the Hacienda Parties breached the Settlement Agreement or that any of the conduct it alleges were breaches caused any damage to RREEF. The Hacienda Parties are accordingly entitled to a judgment in their favor on those claims.

DATED: March 14, 2023                    HILL, FARRER & BURRILL LLP

By: */s/ Kevin H. Brogan*
Kevin H. Brogan
Stephen J. Tomasulo
Jeffrey B. Bell
Attorneys for Plaintiffs and Counter-Defendants 3500 Sepulveda, LLC and 13th & Crest Associates, LLC, and Counter-Defendant 6220 Spring Associates, LLC