**HILL, FARRER & BURRILL LLP**
Kevin H. Brogan (Bar No. 089427)
kbrogan@hillfarrer.com
Stephen J. Tomasulo (Bar No. 181013)
stomasulo@hillfarrer.com
Jeffrey B. Bell (Bar No. 269648)
jbell@hillfarrer.com
One California Plaza
300 S. Grand Avenue, 37th Floor
Los Angeles, California 90071-3147
Telephone: 213.620.0460
Fax: 213.624.4840

Attorneys for Plaintiffs 3500 SEPULVEDA, LLC and 13th & CREST ASSOCIATES, LLC and Counter-Defendants 3500 SEPULVEDA, LLC, 13th & CREST ASSOCIATES, LLC, and 6220 SPRING ASSOCIATES, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3500 SEPULVEDA, LLC, a Delaware limited liability company; and 13th & CREST ASSOCIATES, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>RREEF AMERICA REIT II CORPORATION BBB, a Maryland corporation, et al.<br><br>Defendants.<br><br>RREEF AMERICA REIT II CORPORATION BBB, a Maryland corporation<br><br>Counter-Claimant,<br><br>3500 SEPULVEDA, LLC, a Delaware limited liability company, et al.<br><br>Counter-Defendants. | Case No. 2:17-cv-08537-AFM<br><br>The Hon. Alexander F. MacKinnon<br><br>**PLAINTIFFS AND COUNTER-DEFENDANTS' REBUTTAL POST-TRIAL BRIEF**<br><br>Trial<br>Date: February 6, 2023<br>Time: TBD<br>Place: Courtroom #780 |

## I. RREEF FAILED TO ESTABLISH DELAY DURING THE ENTITLEMENT PERIOD.

RREEF's Proposed Statement of Facts and Conclusions of Law confirms RREEF's failure to establish two key aspects of its delay claim during the entitlement period. **First**, before RREEF can begin assigning blame for alleged damage, it must establish the *fact of damage* with reasonable certainty—i.e., that the Project was in fact delayed during the entitlement period. RREEF's Proposed Findings effectively *assume* that RREEF would have been entitled by December 2013 and cut straight to the question of causation. RREEF, however, fails to substantiate the fundamental premise of its claim—that the entitlement period actually took longer than it otherwise would have.

The sole evidence RREEF cites for the proposition that it would have been entitled by December of 2013 is the testimony of Joshua Lenhert. [*See* RREEF Proposed Fact No. 33.] But not only did Mr. Lenhert's testimony not make sense—he referred to the December 2013 expectation as part of "three-year" entitlement process, a duration that makes no sense under RREEF's theory of delay no matter how one calculates it—he also admitted he was not personally involved in preparing the estimate. Rather, he relied on Mark English, who according to Mr. Lenhert based the estimate solely on RREEF's prior experience with a project in Marina del Rey—a project in a different municipality, and of unknown size, scope, complexity, community involvement, or environment nature. [Hacienda Proposed Fact No. 54.] But when Mr. English was called to testify, he never even mentioned the December 2013 estimate, let alone substantiate it. Nor did RREEF introduce contemporaneous evidence from 2012 or earlier reflecting its purported belief that it would be entitled by December 2013. No internal analysis, no schedules or Gantt charts, no third-party estimates—none of the kinds of documentary evidence one would expect to support the claim that, for the largest development project in Manhattan Beach history, RREEF reasonably would have obtained entitlements 18 months after the first Planning Commission meeting in June of 2012.

**Second**, since RREEF failed to prove that obtaining entitlements in December of 2014 is itself evidence of delay, RREEF had to establish delay by some other evidence—e.g., that the Hacienda Parties either (a) caused the Planning Commission or City Council to add a hearing they otherwise would not have, or (b) caused the time between hearings to be longer than it otherwise would have been. Here again, RREEF falls short. As a primary matter, RREEF fails to identify which comments it believes were permitted versus not permitted under the Settlement Agreement. (Even RREEF must admit, as Mark English did at the time, that many of the Hacienda Parties' concerns were valid.) And of the comments and presentations that RREEF does discuss, it fails to establish that the Planning Commission or City Council actually *did anything* in response to them. Rather than call a City official to testify, RREEF asks the Court to comb through voluminous transcripts, staff reports, and other material to find some connection between something the Hacienda Parties said (which at the Planning Commission level comprised a mere 3% of the transcripts) and some form of delay. The evidence isn't there.

Moreover, the contemporaneous evidence of RREEF's thinking at the time tells a different story. In July of 2014, after all but the final City Council meeting had occurred, Mark English sent a lengthy email to RREEF representatives explaining the problems RREEF had experienced during the entitlement process. Mr. English complained that, after heavily negotiating Conditions of Approval ("COAs") at the Planning Commission level, RREEF had to start "all over again" at the City Council, and that "unfortunately, the City Council sees the project different than the Planning Commission did, which has cost everyone a lot of time and money." [TE 577-0001.] Mr. English complained that "[t]he City Council, or a sub-set of it, have effectively tried to re-plan and re-design the project numerous times," and that "[t]he latest CC decision came as a complete surprise, and points to a process that is not transparent, and lines of communication that don't work." [*Id.*;

*see* Hacienda Rebuttal Fact Nos. 391–392.] At no point in his lengthy explanation of delays did Mr. English even mention the Hacienda Parties, let alone blame them. [*See id.*] RREEF's entitlement delay claim fails.

## II. THERE IS NO EVIDENCE THAT THE CEQA LITIGATION DELAYED MACY'S APPROVAL OR RREEF'S CONSTRUCTION.

In its Proposed Findings, RREEF contends that it had Macy's approval of a site plan in hand by virtue of the 2013 LOI (a document RREEF did not bother to introduce into evidence and which fails to attach the draft site plan referenced in the LOI), but that it had no reason to finalize the agreement while the CEQA Litigation was pending. [RREEF's Proposed Statement at p. XV:19–23.] Once again, not only does the evidence not support this claim, it contradicts it.

As a primary matter, Macy's and RREEF signed the non-binding LOI in 2013, well before the City issued the final Amended MUP in December 2014 containing 56 COAs—including the COA requiring RREEF to set back a portion of the top level of the North Deck that RREEF contended would "jeopardize[] the whole project" because Macy's wouldn't approve it. [Hacienda Proposed Fact No. 78.] Indeed, far from having Macy's agreement in hand, the evidence shows RREEF's negotiations with Macy's were ongoing as of October 2015, if not later. [TE 509-0001 ("I believe this plan … can get all that is needed: … city approval, Macy's approval, and neutral to Hacienda.").] And the site plan Macy's ultimately agreed to is dated April 15, 2016. [TE 1313-00035.]

Nor is there evidence that Macy's would have signed the July 8, 2016 Separate Agreement earlier but for the CEQA Litigation. On this point, RREEF again relies on the testimony of Josh Lenhert, who on rebuttal testified that RREEF couldn't get a final agreement is because "Macy's wanted to see an approved, non-challenged, actionable final plan." [RT 837:22–838:4; *see* RREEF Proposed Fact No. 263.] But Mr. Lenhert admitted he was not personally involved in negotiations with Macy's [RT 835:14–836:6], and his testimony is contradicted by the very fact

that Macy's signed the Separate Agreement in July of 2016—*while the CEQA Litigation was pending*. RREEF never called a witness from Macy's, nor did it introduce documentary evidence suggesting Macy's withheld its agreement because of the CEQA Litigation. RREEF's new theory is manufactured and unsupported by the evidence.

Nor is there evidence that the CEQA Litigation delayed construction after RREEF obtained Macy's approval in 2016. To the contrary, the evidence shows that as soon as RREEF finalized the April 15, 2016 site plan (that Macy's would formally agree to three months later), it advanced the project in parallel with the CEQA Litigation. Specifically, recall that under RREEF's theory, project development tracks the following timeline: **Approved Site Plan → 1 year of preconstruction** (i.e., developing the site plan into detailed construction drawings, going out to bid on contractors, and applying for permits) → **construction**. And as Phil Friedl testified, RREEF needed Macy's approval of the basic site plan before it could begin the year-long preconstruction process. [Hacienda Proposed Fact No. 91.] Consistent with that timeline, on April 18, 2016—three days after finalizing the site plan Macy's would later formally agree to—RREEF's Investment Committee committed $5.5 million for preconstruction. [TEs 788-12; 632-0012.] And eight months later, on December 27, 2016, RREEF had developed construction drawings sufficient to apply for a building permit for the Phase I Northeast Deck.

The critical path of RREEF's Project didn't run through the CEQA Litigation. It ran through Macy's. Once Macy's was on board, RREEF moved its project forward full speed. [See Timeline attached as Exhibit A to Hacienda Parties' Rebuttal Finding and Conclusions.]

### III. THE DIRECTOR WRIT LITIGATION HAD NO IMPACT ON CONSTRUCTION.

RREEF's Proposed Statement confirms there is no evidence that the Director Writ Litigation had any impact on when RREEF began construction. Citing Phil

Friedl's testimony, RREEF contends that it couldn't submit full construction drawings to the City until the Writ Litigation was resolved. [RREEF Proposed Fact No. 280; RT 147:25–148:9.]  RREEF apparently ignores that Mr. Friedl effectively retracted that testimony on cross examination, when he admitted RREEF had filed its application for a building permit on December 27, 2016, two months before the Director Writ Litigation was ever filed.  [Hacienda Proposed Fact No. 116.]  Mr. Friedl also admitted that the City responded to, and gave comments on, RREEF's permit application, but that RREEF became exceedingly frustrated with the City's delays.  [Hacienda Proposed Fact Nos. 119–132.]  Indeed, although RREEF contends construction began in September of 2017 once the City approved the revised site plan, the evidence shows that RREEF was still waiting on permitting as of *October* of 2017.  [TE 518.]  There is no evidence that the City's processing of RREEF's permit application was impacted in any way by the Director Writ Litigation.

In the end, if there were any doubt regarding who RREEF blamed for costly project delays, RREEF's January 2019 Investment Committee memorandum—prepared while litigation was pending—removes it.  [TE 2174-0036.]  In that memorandum, RREEF explained the $67.6 million in additional future costs incurred, assigning nearly $30 million due to problems with the City.  Among other things, RREEF complained of the City's "extreme interpretations of the [COAs], and believed that the City "has chosen to take the most stringent and least commercial interpretation of these COA's, resulting in additional costs to the project as well as a schedule delay, mostly due to the delay in issuance of building permits."  [*Id.* at 0039.]

Like Mr. English's July 2014 email, and Mr. Friedl's September 2017 email to the City Mayor, RREEF's contemporaneous 2019 analysis of project delays does not mention the Hacienda Parties.  RREEF's claims fail.

| | |
|---|---|
| DATED: March 28, 2023 | HILL, FARRER & BURRILL LLP<br><br>By: */s/ Kevin H. Brogan*<br>Kevin H. Brogan<br>Stephen Tomasulo<br>Jeffrey B. Bell<br>Attorneys for Plaintiffs 3500 SEPULVEDA, LLC and 13th & CREST ASSOCIATES, LLC and Counter-Defendants 3500 SEPULVEDA, LLC, 13th & CREST ASSOCIATES, LLC, and 6220 SPRING ASSOCIATES, LLC |

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

7
HACIENDA PARTIES' REBUTTAL BRIEF

# APPENDIX A

*May 1, 2015*
RREEF engages JLL as Development Manager tasked with "finalizing the site plan" TE 505
*April 15, 2016*
Date of Site Plan later agreed to by Macy's. TE 1313-0035
*April 18, 2016*
Invest. Comm. Approves $5.5M for Preconstruction. TEs 788-0012, 632-0012
*Dec. 27, 2016*
RREEF applies for bldg. permit. TE 527
*October 10, 2015 REEF Email:*
"I believe this plan … can get … Macy's approval" TE 509
*September 29, 2017*
RREEF complains to Mayor about costly permitting delays. TE 518
No Macy's Agreement
Preconstruction
Permitting
Entitlements
CEQA Litigation
Director Writ
2015
2016
2017

