**HILL, FARRER & BURRILL LLP**
Kevin H. Brogan (Bar No. 089427)
kbrogan@hillfarrer.com
Stephen J. Tomasulo (Bar No. 181013)
stomasulo@hillfarrer.com
Jeffrey B. Bell (Bar No. 269648)
jbell@hillfarrer.com
One California Plaza
300 S. Grand Avenue, 37th Floor
Los Angeles, California 90071-3147
Telephone: 213.620.0460
Fax: 213.624.4840

Attorneys for Plaintiffs 3500 SEPULVEDA,
LLC and 13th & CREST ASSOCIATES, LLC
and Counter-Defendants 3500 SEPULVEDA,
LLC, 13th & CREST ASSOCIATES, LLC,
and 6220 SPRING ASSOCIATES, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3500 SEPULVEDA, LLC, a Delaware limited liability company; and 13th & CREST ASSOCIATES, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>RREEF AMERICA REIT II CORPORATION BBB, a Maryland corporation, et al.<br><br>Defendants. | Case No. 2:17-cv-08537-AFM<br><br>The Hon. Alexander F. MacKinnon<br><br>**PLAINTIFFS' AND COUNTER-DEFENDANTS' REBUTTAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br><u>Trial</u><br>Date: February 6, 2023<br>Time: TBD<br>Place: Courtroom #780 |
| RREEF AMERICA REIT II CORPORATION BBB, a Maryland corporation<br><br>Counter-Claimant,<br><br>3500 SEPULVEDA, LLC, a Delaware limited liability company, et al.<br><br>Counter-Defendants. | |

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

# TABLE OF CONTENTS

**Page**

I.    REBUTTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW........4

A.    The Entitlement Process:  Planning Commission and City Council Meetings ...............................................................................4

B.    The Macy's Letter of Intent ("LOI") and Macy's Separate Agreement ...............................................................................................5

C.    The CEQA Litigation ...............................................................................7

    1.    The Administrative Record ...............................................................7

    2.    Settlement Negotiations .....................................................................9

    3.    The Project Advances During the CEQA Litigation ..................9

D.    The Writ Litigation .............................................................................10

E.    "Substantial Factor" and "But for" Causation ...................................10

F.    Contemporaneous Evidence Contradicts RREEF's Litigation-Made Claims ..........................................................................................11

REBUTTAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*3500 Sepulveda, LLC v. Macy's W. Stores, Inc.*,
  980 F.3d 1317 (9th Cir. 2020) .......................................................................... 5

**State Cases**

*Michaels v. Greenberg Traurig, LLP*,
  62 Cal. App. 5th 512 (2021) ............................................................................ 11

*Mitchell v. Gonzales*,
  54 Cal.3d 1041 (1991) ..................................................................................... 11

*Viner v. Sweet*,
  30 Cal.4th 1232 (2003) .................................................................................... 11

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

In accordance with the Court's February 14, 2023 Order [ECF No. 261], Plaintiffs and Counter-Defendants 3500 Sepulveda LLC and 13th & Crest Associates, LLC, and Counter-defendant 6220 Spring Associates, LLC, (collectively, the "Hacienda Parties") submit the below rebuttal proposed findings of fact and conclusions of law in connection with the bench trial of RREEF America REIT II Corporation BBB's ("RREEF") counterclaims against the Hacienda Parties.

## I.
## REBUTTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.    The Entitlement Process:  Planning Commission and City Council Meetings

375.    RREEF's estimate that it would obtain entitlements for the Project by December 2013 was based on the testimony of Joshua Lenhert, who admitted he was not personally involved in preparing the estimate. Rather, he relied on Mark English, who according to Mr. Lenhert based the estimate solely on RREEF's prior experience with a project in Marina del Rey—a project in a different municipality, and of unknown size, scope, complexity, community involvement, or environment nature. [Hacienda Proposed Fact No. 54.] But when Mr. English was called to testify, he never mentioned the December 2013 estimate, let alone substantiate it. Nor did RREEF introduce contemporaneous written evidence from 2012 or earlier reflecting its purported belief that it would be entitled by December 2013. Accordingly, RREEF failed to establish with reasonable certainty that the Project was delayed during the entitlement process.

375.    In its Proposed Fact Nos. 190 and 351, RREEF suggests the April 29, 2014 City Council hearing was continued to a subsequent date in order to address the Hacienda Parties' concerns.  In reality, the City Council determined it needed more hearings to address many issues, including: the lack of commitment from Macy's, phasing, size of the Project, the 56 Conditions of Approval from the

4

Planning Commission, the location of or removal of the North Deck and earthquake safety of the parking structures.  [TE 2140 18–31, 49, 52, 59, 83, 162, 176, 188–89, 206).  There is no evidence that anything the Hacienda Parties did necessitated another meeting.

376.   RREEF contends that its failure to provide 240 parking spaces during construction does not constitute a breach, citing the Ninth Circuit's decision in *3500 Sepulveda, LLC v. Macy's W. Stores, Inc.*, 980 F.3d 1317, 1325 (9th Cir. 2020).  [RREEF Proposed Fact No. 27.]   However, the Hacienda Parties are not relying on RREEF's failure to provide 240 parking spaces during construction to retroactively justify their prior opposition to the Project.  Rather, RREEF's statement in 2010 that it would not provide the required number of spaces during construction constituted a material deviation to the site plan to which the Hacienda Parties were entitled to object.  [TE 1007-002].  As the Ninth Circuit noted: "The parties clearly contemplated whether construction of the North Deck would cause parking shortages for Hacienda and agreed to measures to mitigate those expected problems."  *3500 Sepulveda*, 980 F.3d at 1325.  The Hacienda Parties were well within their rights to object to RREEF's disclosure in 2010 that it did not intend to provide sufficient parking during construction .

## B.   The Macy's Letter of Intent ("LOI") and Macy's Separate Agreement

377.   RREEF suggests that after the project had been approved in December of 2014, it had Macy's approval in hand by virtue of the November 11, 2013 Letter of Intent ("LOI"), but that there was no reason to execute the agreement while the CEQA Litigation was pending.  [RREEF Proposed Fact No. 263.]  However, there are numerous and substantial differences between the proposed site plan in November of 2013 and the April 15, 2016 site plan Macy's ultimately agreed to.

378.   As a primary matter, the LOI references site plans purportedly attached to the LOI.  [*See* LOI at p. 1 ("Exhibit A, attached hereto, is a redevelopment program plan that includes phase development site plans.").]  However, no site

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1    plans were included with the LOI submitted to the Court.

2         379.   Although the November 11, 2013 LOI submitted to the Court does not

3    attach the referenced site plans, RREEF's November 1, 2013 letter to the City—

4    which attached revised site plans dated October 30, 2013—is in evidence.  [TE

5    3025 at 0013–0019.]

6         380.   There are numerous critical differences between the site plan in

7    existence at the time of the LOI and the April 15, 2016 site plan that Macy's agreed

8    to in the Separate Agreement.  [*Compare* TE 3025-0016 (October 30, 2013 site

9    plan) *with* TE 1313-0036 (April 15, 2016 site plan).]   For example:

10              a.      In November of 2013, the North Deck was G+2 with 420

11   parking spaces, with 48 surface parking spaces to the west.  In April of 2016, the

12   North Deck was G+2 but with the western portion set-back 90 feet, such that that

13   there were 360 parking spaces in the North Deck and 54 surface parking spaces to

14   the west. (This reflects the change required by the City Council, which Mark

15   English said could "jeopardize the project" with Macy's.  [*See* Hacienda Proposed

16   Fact No. 78.]

17              b.      The Village Shops Component changed substantially between

18   the two site plans, with the shopping area expanding into and adjoining the North

19   Deck and South Deck in the April 2016 site plan.

20              c.      The Northeast Deck is expanded.  Whereas the October 2013

21   site plan called for 421 parking spaces in the Northeast Deck, the April 2016 site

22   plan called for 520 parking spaces.

23        381.   There is no evidence that Macy's approved a revised site plan after

24   December 2, 2014, when the City approved the project, but before July 8, 2016,

25   when Macy's approved a revised site plan.

26        382.   There is no evidence that Macy's would have executed the Macy's

27   Separate Agreement sooner than July 8, 2016, but for the CEQA Litigation.

28        383.   RREEF redacted significant portions of the Macy's Separate

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

6

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

Agreement.  [TE 1313.]  These redacted provisions could contain significant details about the negotiations as well as other terms and provisions of the Macy's-RREEF deal which RREEF has declined to share with the court or counsel.

## C.   <u>The CEQA Litigation</u>

### 1.   **The Administrative Record**

384.   RREEF contends the Hacienda Parties laid the administrative record for the CEQA Litigation.  [RREE Proposed Fact No. 248.]  In the CEQA Litigation, Sensible Citizens challenged the sufficiency of the EIR on grounds relating to, among other things, hazardous materials, traffic issues, and aesthetics.  [*See* TE 2047.]  The evidence shows that numerous agencies, members of the community, and other interested parties provided written comments to the EIR on these issues.

385.   For example, as to traffic issues, Sensible Citizens complained, among other things, that the EIR overlooked the City of El Segundo's concerns about nearby intersections and overlooked traffic on Oak Avenue.  [TE 2047-0003.]  All of these issues were raised in written comments to the EIR that the City also received from agencies and individuals other than the Hacienda Parties.

386.   For example, the City of El Segundo complained that "[t]he EIR's conclusions regarding traffic impacts are not supported by a sufficient degree of analysis," that "[t]he DEIR Traffic Study analysis is inadequate and incomplete," and that "[t]he DEIR studied a limited number of intersections that does not fully evaluate the impacts of the proposed project and it did not include analysis during AM Peak Periods."  [TE 2128-000243.]

387.   Numerous residents of Oak Avenue provided written opposition to the project over traffic concerns, including Douglas and Nancy Au [*id.* at 000291–292], Ed and Kathy Duffy [*id.* at 000295–298], Robin Gohlke [*id.* at 000299–304], Geoffrey & Jennifer Kelsch [*id.* at 000321–323], Andrew Kim, M.D., Susie Oh [*id.* at 000324–334], Steve and Paula Packwood [*id.* at 000376–378], and future member of Sensible Citizens, Chris Prodromides.  [*Id.* at 000388–393.]  In

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

particular, Mr. Prodromides provided written criticism of the EIR, stating, among other things:

> Traffic is horrible from Marine and Sepulveda to Rosecrans and Sepulveda. A sizable increase in retail capacity will add even more pressure to an intersection already rated an "F". [sic] The traffic study concluded the proposed expansion would result in "no impact" to the current traffic. Of course that was the finding, there is no lower grade than an "F"! Ask any resident of Manhattan Beach what they think of the proposed expansion and the traffic it will bring and you better be ready for a long conversation! All this traffic will bleed into the surrounding residential areas, impacting the residents and their children.

[TE 2128-000390.]

388.   Caltrans likewise commented on the traffic plan, noting that "It appears that the access to the new parking structure from Sepulveda Boulevard could create a hazardous situation for the right turning lane."  [TE 2128-000219.]

389.   Diane Wallace, President of the Manhattan Village Homeowners Association, complained that the traffic study was not accurate enough. [*Id.* at 000275.]

376.   As to hazards, the City receive written comments on the EIR from the Manhattan Village Homeowners Association and other individuals. [TE 2128 at 000213–000217.]

377.   As to aesthetics, the City received written comments on the EIR from ten individuals, including Chris Prodromides.  [TE 2128 at 000213–000217.]

378.   Under the category "General/Other/CEQA," the City received comments from the Caltrans, the Native American Heritage Commission, the

8

Metropolitan Transit Authority, the City of El Segundo, the Environmental Programs Manager of the City of Manhattan Beach, the Continental Development Corporation, MB Citizens Against the Village Expansion, Rustin & Tucker, LLP, and fifteen individuals. [TE 2128 at 000213–000217.]

## 2. Settlement Negotiations

379.   RREEF states that "Mr. Briggs explained that Mr. Neumann prevented SCMB from settling the CEQA Litigation in mid-2016," citing Trial Exhibit 104, in which Mr. Briggs said "a settlement without [Mr. Neumann's] blessing will be unlikely." [RREEF Proposed Conclusion No. 363.]  However, there is no evidence that Mr. Neumann did anything to prevent settlement of the CEQA Litigation. Moreover, Phil Friedl admitted that, to the extent Sensible Citizens requested changes to the site plan as part of settlement negotiations, given that the Hacienda Parties were also stakeholders in the Project, it made sense to run any such changes by them as well. [RT 164:23–165:5.]

## 3. The Project Advances During the CEQA Litigation

380.   RREEF states that "While the CEQA Litigation was pending, the Project was at a standstill." [RREEF Proposed Fact No. 265; *see* RREEF Proposed Fact No. 364 ("RREEF could not move forward with construction of the Project in earnest during the pendency of the CEQA Litigation".]  The evidence directly contradicts this.  As soon as RREEF finalized the April 15, 2016 site plan (that Macy's would formally agree to three months later), it advanced the project in parallel with the CEQA Litigation.  Specifically, under RREEF's theory, project development tracks the following timeline: **Approved Site Plan → 1 year of preconstruction** (i.e., developing the site plan into detailed construction drawings, going out to bid on contractors, and applying for permits) → **construction**.  And as Phil Friedl testified, RREEF needed Macy's approval of the basic site plan before it could begin the year-long preconstruction process.  [Hacienda Proposed Fact No. 91.]  Consistent with that timeline, on April 18, 2016—three days after finalizing

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

the site plan Macy's would formally agree to—RREEF's Investment Committee committed $5.4 million for preconstruction. [TEs 788-12; 632-0012.]  And eight months later, on December 27, 2016, RREEF had developed construction drawings sufficient to apply for a building permit for the Phase I Northeast Deck.

**D.**    **The Writ Litigation**

381.    Citing Phil Friedl's testimony, RREEF contends that it couldn't submit full construction drawings to the City until the Writ Litigation was resolved. [RREEF Proposed Fact No. 280; RT 147:25–148:9.]  However, Mr. Friedl effectively retracted that testimony on cross examination, when he admitted RREEF had filed its application for a building permit on December 27, 2016, two months before the Director Writ Litigation was ever filed. [Hacienda Parties' Proposed Fact No. 116.]

382.    Mr. Friedl also admitted that the City responded to, and gave comments on, RREEF's permit application, but that RREEF became exceedingly frustrated with the City's delays. [Hacienda Parties' Proposed Fact Nos. 119–132.]

383.    There is no evidence that the City's processing of RREEF's permit application was impacted in any way by the Director Writ Litigation.

**E.**    **"Substantial Factor" and "But for" Causation**

384.    RREEF contends that the "but for" test of causation does not apply here, and that the Hacienda Parties can be a substantial factor in causing Project delays even if those delays would have occurred anyways.  [*See* RRREEF Proposed Conclusion No. 337.]  However, RREEF misapplies the law.

385.    Because the "substantial factor" test subsumes the "but for" test of causation, RREEF must prove that, but for the Hacienda the Hacienda Parties' conduct, the Project would not have been delayed.  *Michaels v. Greenberg Traurig, LLP*, 62 Cal. App. 5th 512, 531 (2021) ("Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct." (quoting California Civil Jury Instruction (CACI) No. 430)).

386.    RREEF failed to prove that, but for the Hacienda Parties' conduct, RREEF would have obtained entitlements by December of 2013.

387.    RREEF failed to prove that, but for the pendency of the CEQA Litigation, construction would have begun sooner.

388.    RREEF failed to prove that, but for the pendency of the Director Writ Litigation, construction would have begun sooner.

389.    The only exception to the "but for" test is in cases involving "concurrent independent wrongs," which are "multiple forces operating at the same time and independently, each of which would have been sufficient by itself to bring about the harm."  *Viner v. Sweet*, 30 Cal.4th 1232, 1240 (2003).  The reason for this exception is grounded in common sense: "In those few situations, where there are concurrent [independent] causes, our law provides one cannot escape responsibility for his negligence on the ground that identical harm would have occurred without it."  *Mitchell v. Gonzales*, 54 Cal.3d 1041, 1049 (1991).

390.    Thus, in order to avail itself of the exception to the general rule of "but for" causation, RREEF must establish that, even though there were multiple forces acting to delay the Project, the Hacienda Parties' conduct was *sufficient by itself* to bring about the delay.  *See Viner*, 30 Cal.4th at 1232.

391.    RREEF failed to prove that any conduct by the Hacienda Parties was sufficient by itself to delay the entitlement period.

392.    RREEF failed to prove that any conduct by the Hacienda Parties was sufficient by itself to delay construction during the CEQA Litigation.

393.    RREEF failed to prove that any conduct by the Hacienda Parties was sufficient by itself to delay construction during the Director Writ Litigation.

## F.    Contemporaneous Evidence Contradicts RREEF's Litigation-Made Claims

390.    There are three documents in evidence in which RREEF explicitly blames the City of Manhattan Beach for delaying the Project: (1) a July 10, 2014

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

REBUTTAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

email from Mark English to Joe Saunders and Liz Griggs [TE 577]; (2) a September 29, 2017 letter from Phil Friedl to the mayor of Manhattan Beach [TE 518]; and (3) a January 2019 memorandum to RREEF's Investment Committee. [TE 2174.]  None of these documents—or any other contemporaneous documents—mentions the Hacienda Parties as a cause of Project delay.

391.    Shortly before Mark English left, on July 10, 2014—after all but the final City Council meeting had occurred—Mark English sent a lengthy email to RREEF representative Joe Saunders and Liz Griggs of Jones, Lange Lasalle explaining the problems RREEF had experienced with getting the project approved. Unlike RREEF's contrived trial theory in which it blames the Hacienda Parties for delaying the Project, Mr. English never mentions the Hacienda Parties.  He includes the following as the causes of delay:

> MB's Planning Commission spent one year and numerous public hearings vetting the project, and in response to those hearings, RREEF made numerous amendments to the project, all designed to address city, community, and neighbor concerns.  In addition, RREEF and City staff, together with a economic and real estate consultant heavily negotiated a set of development conditions called "Conditions of Approval" which ultimately committed RREEF to significant concessions and project enhancements.  PC voted 4-1 to approve the project. Upon arrival at the City Council for its approval, the process started "all over again" as if the Planning Commission's work had no bearing on the City Council's decision, and, unfortunately, the City Council sees the project different than the Planning Commission did, which has cost everyone a lot of time and money.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1        …

2        Political stability at the City - between approval of the

3        project by Planning Commission and consideration of

4        approval by City Council, 2 new members of the CC were

5        sworn in, and since then; it seems that the current city

6        council lacks cohesion and an ability to come to a

7        consensus.

8        …

9        Role of the City in Land Use Planning - The City Council,

10       or a sub-set of it, have effectively tried to re-plan and re-

11       design the project numerous times.  The role of the city is

12       to evaluate the impact of a proposed project, determine

13       whether it is appropriate within the land use boundaries

14       which the city itself has set up, determine any appropriate

15       mitigating measures, and then either approve it or

16       disapprove it.  Planning by committee, particularly when

17       politics comes into play, serves no one well, and has not

18       worked for Manhattan Village.  Flexibility is another key

19       factor.  Particularly at the City Council level, the CC has

20       sought to attach many conditions to the project that would

21       render the project unreasonably risky to undertake unless

22       everything goes 100% according to plan - no economic

23       cycles, no changes in retailers' needs, no changes

24       whatsoever.

25       …

26       Lack of Communication - complex projects take time to

27       understand, and it is very typical for owners to meet with

28       members of the City Council and Planning Commission.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

REBUTTAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1         In fact, many City Council members feel that they aren't

2   doing their job properly if they don't meet with owners

3   directly to discuss their issues, concerns or support for a

4   project.  RREEF is developing projects all over the US, so

5   has a lot of experience with different local governments.

6   In the case of Manhattan Beach, the planning commission

7   and city council have by and large taken the position that

8   99% of communication with ownership takes place via

9   city planning staff and the city manager.  While city staff

10  are very capable in MB, and their recommendations to CC

11  seem to be crystal clear, there hasn't been a nexus

12  between CC conclusions and the recommendation of their

13  own staff.  The latest CC decision came as a complete

14  surprise, and points to a process that is not transparent,

15  and lines of communication that don't work.

16  [TE 577.]

17        392.   Mr. English also explained that there were "[m]ajor issues with

18  parking structures" that need to be resolved.  These include safety and the

19  "perception that parking garages are inherently more dangerous than surface

20  parking lots."  There was also a concern about aesthetics that needed to be

21  addressed:  "We've proposed to place retail buildings around portions of the

22  garages to hide them, we've proposed using extensive architectural and landscaping

23  features to further soften their impact, and we have also set back the second level of

24  the South and North Decks."  English also noted that functionality was also a major

25  concern.  [TE 577.]

26        393.   On September 29, 2017, RREEF representative Phil Friedl emailed the

27  Mayor of Manhattan Beach, David Lessor, and City Council member Montgomery,

28  expressing his frustration with City-caused delays.  Among other things, Mr. Friedl

explains:

> [W]e continue to be challenged with and severely
> impacted by issues of staff miscommunication,
> coordination and availability. Again this week, due to last
> minute changing requirements in the process and a key
> Wildan plan checker being unavailable, we've had to
> stand down our grading operation that was all set to start
> on Monday 10/2. This after months of communications,
> high level meetings with the Mayor and staff and many
> discussion about the critical nature of meeting a Macy's
> schedule. Please help us solve these kinds of unnecessary
> but very costly delays before we see other critical dates
> slip!

[TE 518 at 0001–0002; RT 221:22–223:15 (Friedl).]

375.    In a January 2019 memorandum to its Investment Committee, RREEF stated that the project had incurred $67.6 million in additional future costs due to a number of factors including "the City of Manhattan Beach's ("CMB") additional requirements to the project."  [TE 2174-0036.]  The memo does not mention the Hacienda Parties.  The memo specifically attributed $29,820,285 in additional costs to delays caused by the City:

> **City of Manhattan Beach Additional Requirements/**
> **Conditions of Approval - $29,820,285**
> The cost and schedule impacts directly related to The City
> of Manhattan Beach's additional requirements and their
> extreme interpretations of the Conditions of Approval
> ("COA'') have been detrimental to the execution of the
> project. The 2014 entitlements for MVSC include 56
> COA's that at best can be described as guidelines for the

REBUTTAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA
300 S. GRAND AVENUE, 37TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3147

1  redevelopment. CMB has chosen to take the most

2  stringent and least commercial interpretation of these

3  COA's, resulting in additional costs to the project as well

4  as a schedule delay, mostly due to delay in issuance of

5  building permits. . . . Speaking of which, another major

6  impact to the project has been the CMB's inability to

7  process building permits in an organized and timely

8  manner. Typically a construction documents will go

9  through 2-3 rounds of plan check before a permit is

10  issued. CMB routinely takes 3-5 rounds to complete plan

11  check, and usually has conflicting comments from

12  different department heads. This disorganization and lack

13  of internal management has pushed back overall schedule

14  by 8 months and has had a $671k architectural and

15  engineering delay cost impact on the project so far, with

16  another $387k allocated for general contractor general

17  conditions delay cost impact.

18  [TE 2174-0039.]

19

20

21

22

23

24

25

26

27

28

REBUTTAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

# APPENDIX A

May 1, 2015
RREEF engages JLL as Development Manager tasked with "finalizing the site plan" TE 505
April 15, 2016
Date of Site Plan later agreed to by Macy's. TE 1313-0035
April 18, 2016
Invest. Comm. Approves $5.5M for Preconstruction. TEs 788-0012, 632-0012
Dec. 27, 2016
RREEF applies for bldg. permit. TE 527
October 10, 2015 REEF Email:
"I believe this plan … can get … Macy's approval" TE 509
September 29, 2017
RREEF complains to Mayor about costly permitting delays. TE 518
No Macy's Agreement
Preconstruction
Permitting
Entitlements
CEQA Litigation
Director Writ
2015
2016
2017

